## MRS. DOROTHY K. AWAI, WIDOW OF JOHN L. AWAI *v.* ERNEST PASCHOAL, DOING BUSINESS AS PASCHOAL'S TAXI SERVICE AND U-DRIVE CARS, AND GLOBE INDEMNITY COMPANY.

### No. 4039.

ARGUED NOVEMBER 14, 1958.       DECIDED JANUARY 15, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by Dorothy K. Awai, widow of John L. Awai, from a judgment of the circuit court, second circuit, reversing the decision of the Maui County Industrial Accident Board in her favor and dismissing the claim to compensation under the workmen's compensation law on account of her husband's death. Hereafter, Dorothy K. Awai will be referred to as claimant and John L. Awai will be referred to as Awai.

Awai was employed as a tour driver by Ernest G. Paschoal, doing business as Paschoal's Taxi Service and U-Drive Cars, on April 27, 1953, and had been so employed for several years before that date. As a tour driver, he drove tourists to various scenic spots on Maui, including the crater of Haleakala.

During the time that Awai was employed by Paschoal, a tour driver for Paschoal normally followed the following procedure on a tour of Haleakala: he would meet a group of tourists at Kahului Airport near the sea level, drive the tourists over a winding road to a parking lot near the observation building at an elevation of about nine thousand feet, lead them along a cinder path for three-tenths of a mile to the silver sword area, entertain them at the observation building and later at a lodge at an elevation of about seven thousand feet, climb an embankment two to three feet high at an elevation of about twelve hundred feet to pick pineapples for them, and drive them back to the airport via Iao Valley.

On April 27, 1953, Awai was seen leaving the airport with six tourists on a seven-passenger automobile; he was next seen leaving the observation building and driving out of the parking lot; he was thereafter seen in the lobby of the lodge and later driving down from the lodge; and he was finally seen slumped unconscious in his automobile on a roadside with the passengers still on the automobile. There was a fresh pineapple in his automobile. Beyond these facts, there is no evidence as to what he did on the day's tour. He was taken to Puunene Hospital, where he died later on the

same day without regaining consciousness. Dr. Edward B. Underwood, who attended him at the hospital, certified that he died from cerebral hemorrhage.

On March 27, 1953, Awai consulted Dr. Lester Kashiwa, complaining of dizziness with headaches off and on. Dr. Kashiwa, upon examination, found that Awai had high blood pressure. He gave medication to relieve the condition and told Awai to go home and rest. He thereafter examined Awai at intervals of three days until April 9, 1953, when he permitted him to return to "light duty" work.

Upon Awai's death, claimant filed her instant claim. In order to prevail, claimant must establish that the death resulted from an accident arising out of and in the course of his employment. (*Wong Chee* v. *Yee Wo Chan,* 26 Haw. 785, 791.) There is no dispute that Awai's death resulted from an accident in the course of his employment. The question before us is whether the death resulted from an accident arising out of his employment. On that question, *Yin* v. *Acme Mattress Company,* 40 Haw. 661, is determinative.

In the *Yin* case, as in the instant case, the sole issue before the court was whether, in the circumstances there presented, the cerebral hemorrhage which the decedent suffered during her employment constituted an injury arising out of her employment. The circuit court, in that case, held that it did not, on the ground that the claimant failed to establish that the decedent suffered any unusual strain in her employment before her seizure. On appeal, the claimant contended that recovery may not be denied if the employee's normal and usual exertions in fact caused her collapse from cerebral hemorrhage. This court followed the rule contended for by the claimant as being the sounder rule. It, nevertheless, affirmed the judgment of the circuit court because the claimant failed to establish a causal connection between normal exertion and the injury. It stated:

"That the decedent had been engaged in performing her normal duties including limited overtime work up to the time of the occurrence of the first symptoms of her cerebral hemorrhage * * * does not, in our opinion establish in the circumstances presented, a reasonable causal connection between the conditions of her employment and the injury. Although many cases includ-

ing those relied upon by claimant, do not require evidence of unusual exertion or strain but only proof of such exertion or strain as may occur in the normal course of work, such minimum requirement does not eliminate the necessity of establishing a causal relationship between such exertion or strain and the injury."

In the instant case, claimant sought to establish the necessary causal connection by Dr. Kashiwa's testimony. On the basis of his knowledge of Awai's physical condition as his patient, Dr. Kashiwa testified that Awai's work as a taxi driver aggravated his condition. He was contradicted by Dr. Alvin V. Majoska. On the basis of factual testimony that he heard in court, supplemented by other assumed facts stated in a hypothetical question, Dr. Majoska testified that he could see no connection between Awai's work and the cerebral hemorrhage from which he was stricken. Also, on direct examination, Dr. Kashiwa testified that high altitude definitely affected Awai's condition. On cross-examination, however, he stated that he was not an expert on the effect of altitude on blood pressure. Dr. Majoska, as well as Dr. Underwood, expressed the opinion that altitude has no effect on blood pressure.

It is for the trier of facts to determine the weight to be given to conflicting expert testimony. (*Yin* v. *Acme Mattress Company, supra.*) The circuit court gave more weight to Dr. Majoska's testimony than to the testimony of Dr. Kashiwa. It stated: "There remain two medical opinions that are diametrically opposed. As to the first, namely, that his activities caused his death, this Court can only be concerned about Dr. Kashiwa's inability to establish any reasons or bases for his conclusions other than the fact, as he admits, that he is not an expert on this subject but if, given an opportunity to experiment he could prove that altitude did have a harmful effect on high blood pressure. Both Doctors Majoska and Underwood were so positive that the converse was true that they allowed close relatives suffering from high blood pressure to travel at high altitudes feeling that their well-being was being safeguarded. Accordingly, the medical testimony and opinion of Dr. Majoska is to be given more weight by the Court than that of Dr. Kashiwa."

On the basis of Dr. Majoska's testimony, the circuit court found that Awai's death was due entirely to his preexisting diseased condition and was not the result of an accident arising out of his employment. We see no error in that finding.

Affirmed.

*William F. Crockett* and *Wendell F. Crockett* (also on the briefs) for appellant.

*Roy A. Vitousek, Jr.* (*Pratt, Tavares & Cassidy* with him on the brief), for appellee.