Dependents of EDWARD K. AKAMINE, Deceased,
Claimants-Appellants *v*. HAWAIIAN PACKING AND
CRATING CO., LTD., Employer-Appellee, and THEO
H. DAVIES AND COMPANY, LTD., Insurance Carrier-
Appellee

No. 5096

April 7, 1972

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON
and KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

On January 19, 1968, Edward K. Akamine reported for work at his place of employment, Hawaiian Packing and Crating Company. He was working the 4:00 p.m. to 12:30 a.m. shift. His duties that evening consisted of unloading, stacking and handtrucking fifteen to twenty pounds of cargo from container trucks to bays approximately fifty feet away. About 9:30 or 10:00 p.m., Mr. Akamine collapsed while pushing a loaded handtruck. Upon collapsing, he grasped one of his thighs and was unable to respond to inquiries made by one of his co-workers. He was taken by ambulance to Queen's Medical Center where he was pronounced dead on arrival. No autopsy was performed and Dr. H. Uchiyama, who signed the death certificate, attributed the death to acute coronary insufficiency.

Mr. Akamine's dependents filed a claim for workmen's compensation which was denied by the Labor and Industrial Relations Appeals Board. The Board reasoned that Mr. Akamine's death was due to his cardiovascular disease of long standing and that it was not attributable to his employment with Hawaiian Packing and Crating Company.

Mr. Akamine's dependents, the claimants-appellants, appealed the Board's decision by direct appeal to this court, pursuant to HRS § 386-88 (Supp. 1971).[1]

The major issue in this case is whether the employer-

---

[1] HRS § 386-88 (Supp. 1971) provides:

Judicial Review. The decision or order of the appellate board shall be final and conclusive, except as provided in section 386-89, unless within thirty days after mailing of a certified copy of the decision or order, the director or any other party appeals to the supreme court by filing a written notice of appeal with the appellate board. The appeal shall be on the record and the court shall review the appellate board's decision on matters of law only. No new evidence shall be introduced in the supreme court, except that the court may, if evidence is offered which is clearly newly discovered evidence and material to the just decision of the appeal, admit the same.

appellee, Hawaiian Packing and Crating Company, and its insurance carrier, Theo H. Davies and Company, adduced substantial evidence to overcome the presumption in HRS § 386-85(1)[2] that a causal connection in fact exists between the injury or death and the employment activity. Review of the record convinces us that appellees failed to adduce substantial evidence to rebut the presumption and thereby dictates that the claimants-appellants must prevail.

The viability of the subject statutory presumption has been firmly established and its meaning clearly articulated by this court. Highly instructive also are the interpretations given by the federal courts to the presumption in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 920(a) (1970), whose language is almost identical to that in the presumption in the Hawaii statute.

The presumption is not a mere procedural device that disappears upon the introduction of contrary evidence. *Corden v. Paschoal's Limited,* 52 Haw. 242, 244, 473 P.2d 561 (1970). It imposes upon the employer the burden of going forward with the evidence and the burden of persuasion. It may be rebutted only by substantial evidence that it is unrelated to the employment. *Hancock v. Einbinder,* 310 F.2d 872, 876 (D.C. Cir. 1962); *Robinson v. Bradshaw,* 206 F.2d 435, 438 (D.C. Cir. 1953). Substantial evidence is relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable man that an injury or death is not work-connected. *Acoustic, Insulation and Drywall, Inc. v. Labor & Industrial Relations App. Bd.,* 51 Haw. 312, 316, 459 P.2d 541 (1969). See also *S & W Crane Service, Inc. v. Dependents of Berard,* 53 Haw. 161, 489 P.2d 419 (1971); *Royal State Nat'l Ins. Co. v. Labor & Industrial Relations App. Bd.,* 53 Haw. 32, 38, 487 P.2d 278 (1971). The presumption is further strengthened by a

[2]HRS § 386-85(1) provides:
   Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:
   (1) That the claim is for a covered work injury; . . .
   . . . .

finding that the death or injury occurred in the course of employment. *Robinson v. Bradshaw, supra* at 439. If the employer fails to adduce substantial evidence to the contrary, the presumption mandates that the claimant must prevail. *Acoustic, Insulation and Drywall, Inc. v. Labor & Industrial Relations App. Bd., supra* at 316.

The legislature indeed has cast a heavy burden on the employer in workmen's compensation cases. In its wisdom in formulating public policy in this area of the law, the legislature has decided that work injuries are among the costs of production which industry is required to bear; and if there is reasonable doubt as to whether an injury is work-connected, the humanitarian nature of the statute demands that doubt be resolved in favor of the claimant.

Operation of the statutory presumption is crucial in cardiac cases where the causes of heart disease are not readily identifiable. "The presumption has been of substantial aid to claimants in obtaining awards in cardiac cases by enabling them to connect up a death involving some form of cardiac disorder with the work. On the other hand, dependents of workmen who have died on the job of an unwitnessed attack have frequently failed to recover compensation where no such presumption was operative." McNIECE, HEART DISEASE AND THE LAW 22 (1961). Because of the relatively higher degree of uncertainty surrounding causation of heart diseases, the strength of the presumption is especially formidable. The court in *Wheatley v. Adler*, 407 F.2d 307, 313 (D.C. Cir. 1968) pointedly stated:

> Rebutting evidence may be hard to develop, given the limits of medical ability to reconstruct why "something unexpectedly goes wrong within the human frame." But that is precisely why the presumption was inserted by Congress. It signals and reflects a strong legislative policy favoring awards in arguable cases.

As noted earlier, the presumption may be overcome only by substantial evidence to the contrary. To be substantial, the evidence, as a minimum requirement, must be credible and relevant. The Board indicated in its Decision and Order

that medical testimony by two expert witnesses produced the requisite substantial evidence. However, a study of the record reveals that certain portions of the testimony of the two expert witnesses on cardiac diseases were irrelevant or entitled to very little probative weight. The net weight of the medical testimony did not amount to substantial evidence.

That the testimony of one of the medical witnesses is entitled to very little probative weight issues from the problem involving the distinction which must be made between etiology of heart disease and legal causation. Elucidation on etiology of heart disease is sought from medical experts. The meaning and boundaries of legal causation are established by the legislature and courts; and finding legal causation in a given case is the function of the Board and not that of medical witnesses. To allow a medical expert to give his opinion as to whether legal causation existed in a particular case could lead to an unjust result. For "a medical man may give a generalized opinion that there was no connection between an incident at work and a heart attack, and, in his own mind, may mean thereby that a pre-existing pathological condition was the overwhelming factor in bringing about the attack and that the part played by the work was insignificant. But, while it may be sound medically to say that the work did not 'cause' the attack, it may be bad law, because, in general, existing law treats the slightest factor of aggravation as an adequate 'cause'." McNIECE, HEART DISEASE AND THE LAW 135 (1961). See also Small, *Gaffing at a Thing Called Cause: Medico-Legal Conflicts in the Concept of Causation*, 31 TEXAS L. REV. 630 (1953). In the instant case Dr. Berk, one of the medical experts, in his unequivocal testimony that there was no connection between Mr. Akamine's death and his employment, relied heavily on his belief that heart diseases originate relatively early in one's life[3] and Mr. Akamine's pre-existing

---

[3]The transcript of the pertinent portion of Dr. Berk's testimony reads:
Q. All right. So, I take it that within his coronary arteries this preexisting

pathological condition was the sole cause of death.[4] The doctor's medical testimony is that physical exercise prolongs the life of one with a cardiac condition.[5] In addition, work activity which is not "extremely exertional" most probably will not precipitate a heart attack. Hence, in the present case, since Mr. Akamine was engaging in physical exercise on the job which was not "extremely exertional" when he collapsed and died, there was no relation between death and employment. The legal consequence of accepting such medical testimony is that application of the usual strain rule would result in the following: Every time a worker collapses

---

arteriolosclerotic heart disease predisposed him to clotting conditions?

A. Yes. I think it's only fair to say this didn't start in latter years. This sort of thing starts way back in your teens probably. Certainly the early 20's.

Q. This builds up within the artery?

A. Yes, sir. We found this particularly in autopsies done in young men in the Army that were killed by shell fire or something of that sort. It's been very distressing to find that so many of these kids who are 18 or 19 already have some deposits in their coronary vessels simply because the American people are too affluent and eat too much fat.

Q. All right. Now, I take it, then, that you can be reasonably medically certain that the arteriosclerotic buildup in his artery was not caused by his work in any manner?

A. No.

Q. All right.

A. Categorically, I would state it wasn't.

[4]The transcript reads as follows:

Q. You are talking in terms of unusual strain for his heart, meaning that it would take an unusual strain for his heart in order to cause a problem?

A. Yes.

Q. In your view, in other words, the usual strain of the work, which has been described to you, would not create the heart condition if it were to be accepted that he died as a result of the heart condition?

A. I don't think anything he did in his work any time in his life has anything to do with the heart condition.

[5]The transcript reads as follows:

Q. Doctor, based on all the facts as you know them, do you have an opinion as to whether his work activity prolonged his life or accelerated his death?

A. If I have to choose one of those, I would say without any hesitation that it would be a prolongation of his life for several reasons. . . .

    *         *         *         *         *

A. Well, if it [the work activity] didn't prolong his [Mr. Akamine's] life, I am certain that it didn't cut his life short.

from a heart attack on the job while engaged in physical labor which is not "extremely exertional" but customary in the particular worker's employment, his claim for compensation or that of his survivors will be denied. This would be clearly contrary to the legislature's mandate that an injury or death occurring on the job is presumed to be work-connected. The primary focus of the medical testimony should have been a discussion on whether the employment effort, whether great or little, in any way aggravated Mr. Akamine's heart condition which resulted in his death. The court in *Robinson v. Bradshaw*, 206 F.2d 435, 437 (D.C. Cir. 1953) stated:

> Several doctors testified, one of whom had examined the deceased in the jail. Their testimony, coupled with the evidence of events leading up to the death, gives support to the findings that deceased was suffering from an illness which led to the conduct which in turn led to his death, and to the conclusion that this illness itself did not arise out of or in the course of employment. But this alone is not sufficient basis for denial of compensation. If an illness which itself is unrelated to the employment is nevertheless aggravated thereby and death is the result then, as we have held, the death is the result of an injury within the meaning of the statute.

The death is compensable in the absence of substantial evidence that the cardiac attack was incited by anything outside the employment. *J. V. Vozzolo, Inc. v. Britton*, 377 F.2d 144, 150 (D.C. Cir. 1967).

Clearly, little probative weight should have been attached to Dr. Berk's testimony that heart diseases originate relatively early in one's life, that Mr. Akamine's preexisting pathological condition must have spurred the attack, and that work activity which is not "extremely exertional" will not precipitate a heart attack.

Certain testimony by the second medical cardiac specialist is irrelevant. Dr. Kuramoto testified that Mr. Akamine's heart attack could just as well have occurred elsewhere or

while sleeping in bed.[6] It is legally irrelevant, in determining the question of work-connection, whether Mr. Akamine's attack might have occurred at home, on the street or elsewhere while tending to his private affairs. The only consideration should have been whether the attack in fact was aggravated or accelerated by his work activity:

> . . . In short, where the heart has deteriorated to the point that potentially any appreciable degree of exertion carries a danger of precipitating, or so acting upon the condition as to accelerate, a disabling or fatal attack, if the effort or strain, which in fact precipitates or contributes to the attack, occurs during the course of the employment and as an ordinary or usual incident of the work, the resulting disability or death is compensable. Benefits are not lost because the amount of the work stress was such that it might or could be duplicated in routine activity about the home or in customary movements or effort while there. See *Treloar v. Falmouth Docks & Engineering Co., Ltd.* A. C. 481 (1933); 26 *B.W.C.C.* 214, 222. Nor is compensation to be denied because of proof that even if the accident had not hap-

---

[6]The transcript reads as follows:

Q. Well, Doctor, I take it from Mr. Akamine's medical history, his death could have come while eating at the table, sleeping in bed?

A. There is no way of predicting when you are going to have another heart attack or arrhythmia — something that could cause his death. There is no way of predicting when a man is going to have his next one. I can't predict that. I don't think anybody in this world can do that.

Q. Sure.

A. I don't think, to be fair, a guy may be declared healthy one minute by a whole medical examining board and might drop dead of a heart attack the next and have a normal EKG and everything like that. Then all of a sudden you give out a clot or something and he passes out. So that actually to be fair, we have no way of determining how long this person is going to live, when he will have his next attack or what will bring it on. There is no way of predicting it.

A guy could be sleeping in bed and die in bed the next morning. There is no point in trying to argue that this is going to do this or that. It is pretty well documented through the medical profession that nobody can really tell what's really aggravating these things or think — although they say excessive stresses, excessive worries or pressures might bring it on. It is just a well calculated guess.

pened the workman would have become totally disabled or would have died within a relatively short time by reason of the progress of his disease. *Woodbury v. Frank B. Arata Fruit Co.*, 64 Idaho 227, 130 P.2d 870 (Sup. Ct. 1942).
*Dwyer v. Ford Motor Co.*, 36 N.J. 487, 492 (1962); see also *Wheatley v. Adler*, 407 F.2d 307, 311 (D.C. Cir. 1968); *Laclede Steel Co. v. Industrial Comm.*, 6 Ill.2d 296, 128 N.E.2d 718, 721 (1955); *Employers Mut. Liability Ins. Co. v. Industrial Acc. Comm.* 263 P.2d 4 (Cal. 1953); McNIECE, HEART DISEASE AND THE LAW 12 (1961).

The presence of an additional factor necessitates claimants' entitlement to compensation benefits: pervading doubt as to the cause of Mr. Akamine's death bared especially in testimony by Mr. Akamine's examining physician, Dr. Kuramoto. The beneficent and liberal purposes of the statute require that doubts be resolved in favor of the claimant. *Acoustic, Insulation and Drywall, Inc. v. Labor & Industrial Relations App. Bd.*, 51 Haw. 312, 316, 459 P.2d 541 (1969); *J. V. Vozzolo, Inc. v. Britton*, 377 F.2d 144, 147 (D.C. Cir. 1967); *Hancock v. Einbinder*, 310 F.2d 872, 875 (D.C. Cir. 1962). Dr. Kuramoto's testimony is replete with uncertainty as to the cause of Mr. Akamine's death. When asked if he could render an opinion as to whether the attack was related to Mr. Akamine's work activity, Dr. Kuramoto replied:

> I can't tell you that. I can't answer truthfully whether it was related or not. I think the best — I mean as far as I can see, it could have happened anytime. Whether it happened that day, you know, at that certain hour. It's just happenstance. That's all.
> . . .

The doctor speculated that Mr. Akamine's grasping of his leg at the time of his collapse may be attributed to a leg cramp which was aggravated by his employment activity and which caused the release of a blood clot resulting in death by reason of pulmonary embolism. The prevalence of such doubt as to the cause of Mr. Akamine's death repre-

sents a salient index of the absence of substantial evidence to the contrary. This uncertainty, coupled with the deficiencies involving relevance and probative weight of the medical testimony discussed, evinces a clear lack of substantial evidence required to overcome the presumption that the claim is for covered work injury.

Reversed and remanded for determination of amount of award.[7]

*James A. King* (*Bouslog & Symonds* of counsel) for appellants.

*Donald A. Beck* (*Cades Schutte Fleming & Wright* of counsel) for appellee.

DISSENTING OPINION OF LEVINSON, J.
WITH WHOM MARUMOTO, J., JOINS

This appeal arises out of a claim by the dependents of Edward K. Akamine, deceased, for workmen's compensation benefits. The issue presented is whether the Labor and Industrial Relations Appeals Board, hereinafter referred to as the appellate board, erred as a matter of law in finding that Mr. Akamine's death was due exclusively to a pre-existing cardiovascular disease and was not attributable in any manner to his employment. More specifically, this appeal calls upon us to determine whether the appellees adduced "substantial evidence" before the appellate board to rebut the presumption created by HRS § 386-85(1) that the claim was for a work covered injury. Contrary to the majority opinion, I believe that such evidence was adduced. I therefore

---

[7]We note that in previous reversals this court remanded for new trials. S & W Crane Service, Inc. v. Dependents of Berard, 53 Haw.161, 489 P.2d 419 (1971); Acoustic, Insulation and Drywall, Inc. v. Labor and Industrial Relations App. Bd., 51 Haw. 312, 459 P.2d 541 (1969). However, those cases were heard pursuant to the then established procedure which allowed a party to appeal a decision of the Board to the circuit court for a trial de novo. Because of the erroneous instructions concerning the presumption and given by the circuit judge, the jury could not properly evaluate the facts in light of the presumption. In the instant case, the facts are not in dispute; and the undisputed facts are not sufficient, as a matter of law, to constitute substantial evidence to rebut the presumption. *See* Wheatley v. Adler, 407 F.2d 307 (D.C. Cir. 1968); Hancock v. Einbinder, 310 F.2d 872 (D.C. Cir. 1962); Robinson v. Bradshaw, 206 F.2d 435 (D.C. Cir. 1953).

dissent.

In *Royal State National Insurance Co. v. Labor & Industrial Relations Appeal Board*, 53 Haw. 32, 35, 487 P.2d 278, 280 (1971), we said that HRS § 386-85(1)

> places on the employer both the burden of going forward with the evidence as well as that of persuasion. *Acoustic, Insulation & Drywall, Inc. v. Labor & Industrial Relations Appeal Board*, 51 Haw. 312, 316, 459 P.2d 541, 544, rehearing denied, 51 Haw. 632, 466 P.2d 439 (1970). Thus the claimant will win unless the employer produces "relevant and credible evidence of a quality and quantity" sufficient to convince a reasonable man that there exists a non-compensable alternative explanation for the injury. *Acoustic, Insulation & Drywall, Inc. v. Labor & Industrial Relations Appeal Board, supra.*

The presumption of coverage was designed to give the employee the benefit of any doubt, but it is not irrebuttable.[1] Once the trier of fact has determined that the employer has met the substantial evidence test, its task "is to weigh and consider the evidence offered by the employer against the evidence offered by the claimants supportive of the claim." *Acoustic, Insulation & Drywall, Inc. v. Labor & Industrial Relations Appeal Board, supra,* 51 Haw. 312, 317, 459 P.2d 541, 544. Where substantial evidence is adduced by both claimant and employer, this court cannot declare that the appellate board is clearly erroneous in its determination that the weight of the evidence lies with one party or the other. *See Wheatley v. Adler,* 407 F.2d 307, 314 (D.C. Cir. 1968).

The appellate board, in its Decision and Order of November 13, 1970, found that "there is substantial and

---

[1] In Holt v. Acme Mattress Co., 40 Haw. 660, 675 (1955), we quoted with approval the following language from Luteran v. Ford Motor Co., 313 Mich. 487, 494, 21 N.W.2d 825, 828 (1946):

> The workmen's compensation law is not designed as a complete substitute for life insurance, or sick and accident insurance, for employees . . . .

Whatever the merits, as a policy matter, of transmitting workmen's compensation into such substitute life and health insurance coverage, the legislature clearly has not pursued this course.

undisputed medical testimony that the work being done by Mr. Akamine at the time of his death most probably did not contribute to or aggravate his coronary disease." After careful examination of the record, I am persuaded that the appellate board's finding is consonant with both law and fact.

Dr. Kuramoto, the deceased's attending physician and the first of the employer's two medical witnesses,[2] testified that Mr. Akamine had probably died of a heart problem and that the most likely cause was ventricular fibrillation or ventricular tachycardia. He stated that he was unable to express an opinion as to whether the heart attack was work-related.[3] He testified that although he would be reluctant to permit a heart patient to return to employment involving excessive strain, he did not believe that Mr. Akamine's employment had been of this type.

Dr. Berk, who had examined Mr. Akamine's medical records, testified that in his opinion there were five possible causes of Mr. Akamine's death in descending order of probability: 1) ventricular fibrillation (cardiac arrythmia), 2) coronary thrombosis, 3) cerebral hemmorrhage, 4) rupture of a large blood vessel, 5) pulmonary embolism. Although he acknowledged that some "extremely exertional" work activity would be undesirable for a heart patient to resume, Dr. Berk specifically discounted any connection, other than "very remote" possibilities that were "not very likely," between Mr. Akamine's particular work activity and the most likely causes of death. He concluded that Mr. Akamine's work activity probably prolonged his life, but in any event, he was certain that it did not cut it short. While there existed a degree of exertion which would not be beneficial to the heart muscle, Akamine's work activity did not reach that level.

The aforementioned testimony constituted relevant and

---

[2]The claimants presented no medical experts at the appellate board hearing.
[3]In this regard, Dr. Kuramoto remarked that it was "very unfortunate" that no autopsy had been performed. However, on cross-examination, he conceded: "Even at autopsies sometimes you can't determine exactly the mechanism of death . . . . If it's arrythmia, you may not find anything there in the heart . . . ."

credible evidence of a quality and quantity sufficient to convince a reasonable man that Mr. Akamine's death in fact arose out of non-compensable circumstances. It is true that an injury or death may be compensable even though it occurs in the course of the injured or deceased employee's routine duties and that the employer must take the employee as he finds him. However, the injury or death must in fact have been precipitated, accelerated, or aggravated in some material degree by the employee's normal and usual exertions. *Holt v. Acme Mattress Co.*, 40 Haw. 660, 668-70, 672 (1955); *Dwyer v. Ford Motor Co.*, 36 N.J. 487, 493-94, 178 A.2d 161, 164 (1962); *see generally, Awai v. Paschoal*, 43 Haw. 94 (1959). The thrust of the medical testimony before the appellate board was that Mr. Akamine's death was not.[4] It does not matter that the two medical witnesses couched their testimony in terms of probabilities. When the issue is one of medical causation, expert testimony may be qualified and less than unequivocal. *Dzurik v. Tamura*, 44 Haw. 327, 330, 359 P.2d 164, 165-66 (1960); 3 Larson, *Workmen's Compensation Law* § 80.32 (1971). Such testimony may constitute "substantial evidence" rebutting the presumption of coverage. *See Wheatley v. Adler, supra* at 313.[5]

I would affirm the Decision and Order of the appellate board.

---

[4]The majority's conclusion that "little probative weight should have been attached to Dr. Berk's testimony . . . that work activity which is not 'extremely exertional' will not precipitate a heart attack" is self-serving and conclusory. Is the majority now saying that this court rather than the trier of the facts is the final arbiter on questions involving the credibility of witnesses in general and Dr. Berk in particular?

[5]I cannot accept the claimants' suggestion that Drs. Kuramoto and Berk testified in ignorance of the presumption of coverage, the distinction between legal and medical causation, and the fact that Hawaii does not follow the Unusual Strain Rule. The transcript of the hearing before the appellate board reveals that member Saltz carefully explained these elements to the medical witnesses and that each physician indicated that he understood these elements.