RAYMOND MITCHELL, Claimant-Appellee, *v.* BWK JOINT VENTURE, Employer-Appellant, and HAWAIIAN INSURANCE & GUARANTY CO., Insurance Carrier-Appellant

NO. 5753

FEBRUARY 22, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

536

OPINION OF THE COURT BY OGATA, J.

This is an appeal by BWK Joint Venture, employer-appellant, and Hawaiian Insurance & Guaranty Co., insur-

ance carrier-appellant (hereinafter referred as appellants) from a decision and order of March 25, 1974, made by the Labor and Industrial Relations Appeals Board of the State of Hawaii (hereinafter board) and from a subsequent order of May 29, 1974, made by the board denying a petition for reconsideration. The decision and order of the board held that the scrotal hydrocele which Raymond Mitchell, claimant-appellee (hereinafter appellee), experienced was causally related to an industrial accident involving appellee and that he was entitled to certain medical as well as compensation benefits. We affirm.

There is no question that appellee was injured in an industrial accident on January 10, 1970. He was then employed by BWK Joint Venture as a boilermaker at the Hawaiian Electric Kahe Power Plant. He was struck in the lower abdomen and pubic region by heavy boiler tubes weighing between 1200 pounds to 1500 pounds, as they were being hoisted. He was stunned by the impact and while returning home from work that afternoon he felt pain in his back, left hip and leg. The next day he had difficulty getting out of bed. Because of severe pain in his left low back and his left leg, he reported the injuries to his employer on Monday, January 12, 1970.[1] Appellee has not been gainfully employed since that time, except for five days in 1971, when he was employed by Chicago Bridge & Iron Company.

By decision of the Director of Labor and Industrial Relations, dated November 24, 1970, the appellee was found to have sustained personal injury by accident arising out of and in the course of his employment on January 10, 1970. The director stated that the nature of this injury was "degenerative arthrosis of lumbosacral spine," and appellee was awarded temporary total disability benefits from January 12, 1970, to March 22, 1970, and from March 25, 1970, to April 7, 1970. He was also awarded 1% permanent partial disability of the whole man. No appeal was taken from this order.

---

[1] In the Employer's Report of Industrial Injury, dated January 23, 1970, which is an integral part of the record, the employer admitted liability for these injuries.

Thereafter, appellee did not seek medical aid until he went to see Dr. R. J. Parker, a chiropractor, on February 18, 1971, who treated him for his back condition as well as for his scrotal hydrocele. On March 25, 1971, appellee informed the Workers' Compensation Division that he had been receiving treatments from Dr. Parker; that these treatments were made necessary because of the injuries he sustained on January 10, 1970. The director then issued his decision on November 2, 1971, in the form of a supplemental award awarding temporary total disability benefits to the appellee, beginning April 30, 1970, to March 24, 1971, and from March 30, 1971, through such time as is determined by the director that such disability ends. However, on November 16, 1971, at the request of the appellants, who claimed that HRS § 386-89 (1975 Supp.) required a showing of substantial evidence that there has been a change in or a mistake in the determination of a fact concerning claimant's physical condition, the director reopened his decision of November 2, 1971, for further reconsideration.

On August 16, 1972, after further hearing, the director issued his decision in which he found that appellee "had suffered a recurrence of symptoms of the industrial injury of January 10, 1970." The decision also noted that the director had rendered a decision on November 2, 1971, holding the employer liable to pay benefits, but that decision had been reopened on the appellants' asserted grounds that appellee's condition had not changed and that the award of November 24, 1970 should not have been reopened. Appellants' contention that appellee's hydrocele was non-industrial was also noted in that decision. The director found that the appellee was totally disabled from April 30, 1970, through March 24, 1971; from March 30, 1971, through May 11, 1972, and at the hearing on May 11, 1972, he found that appellee was and continued to be totally disabled from work. The decision of the director held the employer liable to pay to the appellee total disability compensation benefits from April 30, 1970, through March 24, 1971, and from March 30, 1971, to such date as the disability ends. The decision further found that

there was no evidence to show that appellee was injured while he was employed by Chicago Bridge & Iron Company, and, therefore, it was exonerated from appellee's claim for compensation.[2]

Although appellants again requested the director to reopen his last decision under the provisions of HRS § 386-89 (1975 Supp.), the appellants were notified by the director that their request for reopening would be treated as a notice of appeal to the board.

On March 25, 1974, the board rendered its written decision and order in which it held that after appellee's industrial accident of January 10, 1970, he developed a scrotal hydrocele which was causally related to the industrial accident; that appellee's hydrocele had been corrected by surgery; that all medical and hospital bills received by appellee from February 1971 to December 1972 for the treatment of his low back and hydrocele, including surgery, are within the scope of coverage as defined in HRS ch. 386; and that appellee's second hydrocele is not related to the industrial accident. The board further concluded that the director's ruling on November 24, 1970, on temporary total disability was final; that appellee was not entitled to temporary total disability for the period following the director's initial award and prior to February 12, 1971; that appellee was found to be temporarily totally disabled between February 12, 1971, and December 28, 1972; and that appellee was not totally disabled within the meaning of the Workers' Compensation Act after December 28, 1972, through December 1973.

The decision and order provided that since the appellee prevailed on the most important issue on appeal, the appellee was entitled to recover his attorney's fees and costs. It further ordered a remand of this case to the director for further investigation and determination of appellee's disfigurement and permanent disability.

---

[2] Chicago Bridge & Iron Company was dismissed with prejudice from this case after it was appealed to the board by stipulation filed on November 9, 1972.

I.

On January 31, 1974, appellants filed with the board Employer's Proposed Decision and Order and Supporting Memorandum, under which appellants proposed to the board 58 separate findings of fact. The proposed decision and order also contained the appellants' recommended conclusions of law. The board in its decision and order of March 25, 1974, rejected appellants proposed findings 12-23, 25-27, 30-37, 39, 41, 43-44, 48-55, and 57, for the reason that these findings of fact had been disapproved by the board or were repetitious of testimony which was already in evidence regardless of whether or not the repetition was accurate. Appellants contend that the wholesale rejection of their proposed findings by the board is contrary to HRS § 91-12, which requires a ruling on each proposed finding, as follows:

> *Decisions and orders.* Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law. If any party to the proceeding has filed proposed findings of fact, the agency shall incorporate in its decision a ruling upon each proposed finding so presented. Parties to the proceeding shall be notified by delivering or mailing a certified copy of the decision and order and accompanying findings and conclusions within a reasonable time to each party or to his attorney of record.

Appellants also assert that the board did not take into consideration and did in fact reject their proposed findings 42, 47, and 56, which were expressly indicated in the board's decision and order as having been accepted and incorporated by reference into the decision. For this reason they further contend that the board violated HRS § 91-12.

In *In Re Terminal Transportation, Inc.*, 54 Haw. 134, 504 P.2d 1214 (1972), we said with respect to the requirement of HRS § 91-12, that "the agency shall incorporate in its deci-

sion a ruling upon each proposed finding so presented" by any party:

It is a settled rule in administrative law that a separate ruling on each proposed finding filed by a party is not indispensable. 2 Davis, Administrative Law Treatise § 16.02 (1958). All that is required is that the agency incorporate its findings in its decision. *See* NLRB v. Sharples Chemicals, Inc., 209 F.2d 645, 652 (6th Cir. 1954). In so doing, however, the agency must make its findings reasonably clear. The parties and the court should not be left to guess, with respect to any material question of fact, or to any group of minor matters that may have cumulative significance, the precise finding of the agency. *See generally* California Motor Transport Co. v. Public Utilities Commission, 59 Cal. 2d 270, 379 P.2d 324, 28 Cal. Rptr. 868 (1963).

54 Haw. at 139, 504 P.2d at 1217.

In *NLRB v. Sharples Chemicals, Inc.*, 209 F.2d 645 (6th Cir. 1954), the respondent had submitted 53 proposed findings to the NLRB. Of such findings 20 were accepted by the Board and remainder rejected. Section 8(b) of the Administrative Procedure Act required the agency to rule on each proposed finding and to include in the record a statement of the reasons and basis for its decision. The respondent contended that the Board violated this section. In regard to this contention the court stated:

Respondent contends that the Board failed to comply with the provisions of § 8(b) of the Administrative Procedure Act, which requires the agency to show its ruling on each proposed finding and to include in the record a statement of the reasons and basis for its decision on all material issues presented. Section 1007(b), Title 5 U.S.C.A. The respondent offered 53 proposed findings, of which the Board accepted 20. It rejected the remaining proposed findings "because they are, in whole or in part, contrary to the facts or the law or because they are immaterial." Such a statement indicated the Board's ruling

with respect to its adoption or rejection of all 53 of the proposed findings, and we see no objection to including all 53 rulings in one sentence instead of 53 separate sentences. Respondent contends, however, that such a statement is too general with respect to the reason for each ruling, and that this Court is not able to tell in this procedure whether a certain proposed finding was rejected because it was immaterial or not established by the evidence. It strongly contends that the Board was not justified in ruling that many of the findings were immaterial. Whether the proposed finding is immaterial or not goes to the merits of the ruling. Whether right or wrong in the ruling, the Board gave its reason as required by the Act. Findings on immaterial issues are not required. Cf. N. L. R. B. v. Newport News etc. Co., supra, 308 U.S. at page 247, 60 S.Ct. 203. The Board was not limited to relying upon one reason. The Board takes its chances on having a ruling reversed because it has failed to explain its reason sufficiently, or the reason may be so general and all embracing as to justify the Court in reversing the ruling for lack of a specific reason, but in the present case, considering the findings eventually made by the Board, the issues involved, and the detailed nature of the proposed findings which were rejected by the Board, we are of the view that the Board indicated to us its reason for each ruling with enough particularity to enable us to satisfactorily review it.

209 F.2d at 652-653.

*See also American President Lines, Ltd. v. N.L.R.B.*, 340 F.2d 490 (9th Cir. 1965).

From the foregoing, we are satisfied that the board did not commit error in rejecting appellants' proposed findings of fact. However, appellants further argue that the rejection by the board of proposed findings 32-36, 39, 41-44, 47-48 and 51-57, was arbitrary and capricious. We disagree.

Proposed findings 32-36, summarized in detail the testimony of one of appellants' expert medical witnesses, Dr. Herbert Luke. Essentially, his testimony was that because

there was no indication in the medical record of any direct blow to claimant's genitalia when he was struck by the boiler tubes, the hydrocele that developed subsequently could not have been caused by that industrial accident. Proposed findings 39 and 41-43 related to testimony of Dr. Andrew Morgan, which also outlined his testimony in detail, similar in form to proposed findings 32-36. Dr. Morgan testified that his medical opinion was that appellee had a chronic inflammatory hydrocele, while Dr. Luke testified that his medical opinion was that appellee's hydrocele was caused by congenital conditions. Proposed findings 44 and 47 are also simply the summary of the testimony of Dr. R. J. Parker, chiropractic doctor, who appeared in appellee's behalf. The remaining proposed findings, 48 and 51-57,[3] related to testimony furnished by Dr. Cesar de Jesus, who also appeared in claimant's behalf. All of these proposed findings are simply the testimony of these four medical witnesses and how they testified. If these proposed findings are proper and should have been adopted, the findings that the board would be compelled to adopt would not constitute findings of basic facts, but merely the testimony of the witnesses.

It is stated in 2 *Cooper, State Administrative Law,* at p. 478 (1965), that when "an agency merely summarizes the testimony of all the witnesses, and then . . . sets forth the ultimate conclusions of fact and law in statutory language," it is not a sufficient compliance to make findings of fact. *Charlton v. Dan Brosnahan Constr. Co.,* 108 So.2d 624 (Fla. App. 1959); *American Transp. Co. v. Public Serv. Comm'n,* 239 Ind. 453, 154 N.E.2d 512, 158 N.E.2d 653 (1958); *Weston v. New Jersey State Board of Optometrists,* 32 N.J. Super. 502, 108 A.2d 632 (1954).

We do not discern anything in the proceedings of the board with reference to this case which indicates that the

---

[3] The substance of appellants' proposed finding 56, that Dr. de Jesus testified that he did not know the cause of claimant's hydrocele, is in fact incorporated in the decision and order.

"powers and resources of government had been used in a manner giving an appearance of being arbitrary and capricious." *In Re Western Motor Tariff Bureau, Inc.* 53 Haw. 14, at 19, 486 P.2d 413, at 416 (1971). On the contrary, there is a presumption that public officers performing their duties have complied with the applicable procedural requirements; it is for appellants to overcome this presumption. 2 *Cooper, State Administrative Law,* at 706.

II.

The decision of the director dated August 16, 1972, which supplemented the initial award of November 24, 1970, by granting to the claimant temporary total disability benefits from April 30, 1970, through March 24, 1971, and from March 30, 1971, until a future date to be determined by the director, was issued under HRS § 386-89(c) (1975 Supp.). The provisions of this section authorize the director to review a compensation case at any time within a period of ten years after the last payment of compensation or the rejection of a claim, upon the application of a claimant because of a change in or a mistake in a determination of fact relating to the physical condition of the injured employee. Before the director may grant the relief requested by the injured employee under HRS § 386-89(c) (1975 Supp.), there must be a showing by substantial evidence of such a change in or mistake in a determination of fact relating to his physical condition.

Appellants recognized such authority when they requested that the director reconsider a similar decision that was issued on November 2, 1971. The appellants in their request for such reconsideration to the director stated:

It is requested that the Supplemental Award of November 2, 1971 be reconsidered and this matter reopened under § 386-89 so that this new claim for compensation will be denied.

The claim should be denied because the award of November 24, 1970 in this matter had become final under § 386-87 many months before. HRS § 386-89 requires a

showing of substantial evidence that there has been a change in or a mistake in the determination of fact concerning Claimant's physical condition.

The board, therefore, upon appeal from the director was fully aware of the relevant statutory authority. The only avenue available for the director, and upon appeal therefrom, the board, to relate the appellee's hydrocele to the accident of January 10, 1970, was to reopen the award of November 24, 1970 under HRS § 386-89(c) (1975 Supp.). As the hearing opened on November 26, 1973, the chairman of the board remarked:

The issues that are on hearing before the Board today, de novo, are the matters of the hydrocele operation which Claimant had subsequent to the original award in this matter, which Claimant alleges is causally related to the original accident on January 10, 1970. Carrier denies this claim and the case before us has arisen primarily on this issue.

The two issues which will be heard at this time are:

1. Whether the Claimant's hydrocele and subsequent disability related to the hydrocele are causally related to the initial accident of January 10, 1970; the issue of Claimant's temporary disability following the hydrocele operation. Claimant is contending he is still disabled, has been totally disabled since the hydrocele operation and continues to be totally disabled up to the present time. Carrier denies that the hydrocele operation was in any way causally related to Claimant's accident, and further alleges that, if the Board finds that the hydrocele operation was covered, that Claimant has not continued to be totally disabled during the period alleged.

Mr. Watkins?

MR. WATKINS: And we also contest, Mr. Chairman, the period of temporary total disability before the hydrocele operation, the period being of payments after March 30th of 1970, which was the end of the period covered by the award of November 24, 1970.

CHAIRMAN: The record will so show that that matter is also at issue before us.

Based upon the record in this case, including the decision and order of March 25, 1974, which we sustain for reasons set forth herein, we hold that the board did not commit error in reopening the director's order of November 24, 1970.

### III.

It is also contended by appellants that the board unlawfully concluded that appellee's hydrocele was causally related to the industrial accident of January 10, 1970. We think that this issue is now precluded by what we said in *De Fries v. Association of Owners, 999 Wilder*, 57 Haw. 296, 555 P.2d 855 (1976); *De Victoria v. H & K Contractors*, 56 Haw. 552, 545 P.2d 692 (1976); *Akamine v. Hawaiian Packing & Crating Co.*, 53 Haw. 406, 495 P.2d 1164 (1972).

We said in *De Victoria v. H & K Contractors*, 56 Haw. at 561-562, 545 P.2d at 699, "that a proceeding brought by a claimant under HRS § 386-89(c) is plainly a 'proceeding for the enforcement of a claim for compensation under [our workmen's compensation] chapter.' HRS § 386-85. Where, as here, the primary issue is whether or not an injury is related to a work accident, a claimant is entitled to the same presumption on review of a case once closed that his claim is for a covered injury as that in an original hearing." in *De Fries v. Association of Owners, 999 Wilder, supra,* we were faced with a problem where a claimant sought to obtain a review of a compensation case under HRS § 386-89(c) (1975 Supp.). In that case, we invoked the presumption of covered work injury under HRS § 386-85. There we held that "substantial evidence" as used in HRS § 386-85 means a high quantum of evidence, and concluded that the presumption had not been overcome by the employer that the arthritic condition of the claimant was work connected. Further, we explained *Akamine v. Hawaiian Packing & Crating Co. supra,* as follows:

In *Akamine,* this court reversed an appeals board verdict for the employer. We concluded that there was an absence of substantial evidence to support the employer, even though one of the employer's expert medical witnesses had definitely concluded that the claimant's heart attack was unrelated to his work activity and that the work activity probably prolonged claimant's life; while the other expert witness, a Dr. Kuramoto, had testified that claimant's heart attack could just as well have occurred elsewhere or while sleeping in bed. 53 Haw. at 410-13, 495 P.2d at 1167-68. We noted that, in contrast to the other expert, Dr. Kuramoto would not give a definite opinion as to whether claimant's heart attack was work-related. 53 Haw. at 414, 495 P.2d at 1169. From Dr. Kuramoto's refusal to give a final opinion and from his testimony that the attack *might* have been caused by a blood clot which might have been caused by a leg cramp aggravated by work activity, the *Akamine* court concluded that there was "pervading doubt" as to the cause of the heart attack and that the prevalence of such doubt "represents a salient index of the absence of substantial evidence" to support the employer. 53 Haw. at 414-15, 495 P.2d at 1169. Taking into consideration the court's explicit statement twice in *Akamine* that doubts are to be resolved in favor of claimants, and considering that one medical expert had definitely concluded that the claimant's heart attack was unrelated to employment, the fact that the court found Dr. Kuramoto's testimony to evidence "pervading doubt" indicating "an absence of substantial evidence" makes it clear that the employer in workers' compensation cases carries a very heavy burden of persuasion. It is true that under our prior case law the employer's burden is satisfied by "substantial evidence", but *Akamine* also requires (1) that the evidence be substantial in "net weight" (53 Haw. at 410, 495 P.2d at 1167) and (2) that in the ascertainment of net weight all reasonable doubts are to be resolved in favor of the claimant.

57 Haw. at 305, 555 P.2d at 860-861.

On whether appellee's hydrocele was causally related to the industrial accident, the board in its decision and order said:

> In addition we have carefully considered the large amount of medical testimony offered based on general medical experience that purports to show that Claimant's initial scrotal hydrocele might not be causally related to the serious traumatic accident which Claimant suffered, and weighed it in relation to the testimony of Claimant's own treating physician. Dr. DeJesus was initially of the opinion that the scrotal hydrocele was of traumatic origin, later doubtful, and finally quite certain that he could not assure us to a reasonable medical certainty that the hydrocele was not of traumatic origin. Nor was he able to pinpoint any other cause.
>
> Dr. DeJesus' testimony raises a strong doubt favoring Claimant against the general medical testimony.
>
> In consideration of the nature, the severity, and the location of the blow which Claimant was struck, and the proximity in time of the development of the hydrocele, all in the light of the remedial and beneficial intents of the Workmen's Compensation Act, we have reached the final conclusion that there is a causal relation between this scrotal hydrocele and Claimant's industrial accident.

We think that these findings are reasonably clear, especially in light of the presumption that "the claim is for a covered work injury" in the absence of substantial evidence to the contrary. There is substantial evidence in the record to sustain the findings when we consider the presumption in HRS § 386-85. *De Fries v. Association of Owners, 999 Wilder,* supra; *De Victoria v. H & K Contractors, supra; Akamine v. Hawaiian Packing & Crating Co., supra.*

IV.

Appellants also contend that if the order of November 24, 1970, was lawfully reopened, the board nevertheless unlaw-

fully awarded temporary total benefits to the appellee after March 22, 1970. It is difficult to comprehend appellants' arguments as to this contention. Under HRS § 386-89(c) (1975 Supp.) the board on appeal from the director is authorized to "review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation." This section further states: "The decision shall not affect any compensation previously paid, except that an increase of the compensation may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, a decrease of the compensation may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased compensation shall be deducted from any unpaid compensation in such manner and by such method as may be determined by the director."

However, the decision and order of March 25, 1974, did not disturb the order of November 24, 1970 with respect to temporary total disability by providing further disability payments to appellee after April 7, 1970. In fact the decision and order expressly set aside the provision in the order of August 16, 1972, which awarded further temporary total disability benefits from April 30, 1970 through February 12, 1971. Consequently, we do not interpret appellants' argument to mean that the board should have adjusted the temporary total disability compensation paid appellee under the order of November 24, 1970. The fact that appellee applied for unemployment compensation and subsequently received such benefits while he was in receipt of temporary total disability benefits may affect his credibility; however, the issue of credibility is one within the primary responsibility of the board as the fact finder whose determination will not be disturbed lightly. *De Victoria v. H & K Contractors, supra.*

## V.

Appellants advance the further contention that the decision and order of the board is illegal because it is without the

support of reliable, probative and substantial evidence and, therefore, in violation of HRS § 91-10 and § 91-14 (1975 Supp.). This contention is based upon appellants' reasoning that the board awarded appellee disability "benefits for periods of time during which his temporary total disability was solely due to the surgery for correcting appellee's scrotal hydrocele . . . or during periods in which he had collected unemployment compensation on his professed ability to be gainfully employed."

We have already discussed and disposed in the preceding part IV, the subject of collecting unemployment compensation and its effect on appellee's credibility before the board. We have further stated previously that appellee sought to have the director to reopen his claim according to HRS § 386-89(c) (1975 Supp.) on the basis of a change in or of a mistake in a determination of fact related to his physical condition. We agree with the board that there is substantial evidence in the record considering the presumption to support its decision and order that the hydrocele was caused by the industrial accident of January 10, 1970.

## VI.

HRS § 386-93(b) (1975 Supp.) provides in pertinent part as follows:

> (b) If an employer appeals a decision of the director or appellate board, the costs of the proceedings of the appellate board or the supreme court of the State, together with reasonable attorney's fees shall be assessed against the employer, if the employer loses; . . . .

The appellants contend that the board unlawfully awarded attorney's fees and costs to the appellee in its decision and order of March 25, 1974. They predicate their contention on the argument that they did not lose their appeal before the board; that they had substantially reduced the amount of temporary total disability benefits that the director in its decisions of August 16, 1972, and April 10, 1973, had awarded to the appellee.

The board stated in its decision and order that "the most important issue in Employer's appeal related to the question of whether the Claimant was entitled to further temporary total disability based upon the contention that Claimant's disabling scrotal hydrocele was causally related to his industrial accident." Under the decision, the appellee prevailed on this point; and the appellants lost.

A careful examination of the record reveals that almost all of the witnesses to this case were called by the parties to testify with respect to the cause of appellee's hydrocele. We are satisfied that the appellee has prevailed on the crucial issue in this case before the board and that appellants did not. In the quoted language of the statute, the legislature plainly indicated its intent that if the employer appeals a decision of the director and he loses he should be assessed attorney's fees and costs. It does not provide for a proration of such fees and costs if he should prevail in some minor aspect of the appeal. *Cf. Abreu v. Raymond*, 56 Haw. 613, 546 P.2d 1013 (1976).

## VII.

The appellants finally contend that the board erred in its order of May 29, 1974 which denied their petition for reconsideration. Appellants claim that error was committed because that order was made in violation of HRS § 91-11. The administrative procedure act requires that officials of the agency who are to render a final decision in a contested case shall be familiar with the evidence relevant thereto. HRS § 91-11 states:

> Whenever in a *contested case* the officials of the agency who are to render the *final decision* have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an

opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties. (Emphasis added)

After the board had rendered its decision and order on March 25, 1974, appellants on April 24, 1974, filed with the board a petition for reconsideration of that decision and order and the order of April 5, 1974, relating to attorney's fees and costs. The petition for reconsideration was denied by the board on May 29, 1974, by a simple order made by two of its members, one of whom was not a member at the time this appeal was heard. There is no indication in the record that the board served a copy of the order on appellants, or that appellants were given an opportunity to file exceptions and present arguments to the members of the board, before the order denying reconsideration took effect. Under *In Re Terminal Transportation, Inc.*, 54 Haw. 134, 504 P.2d 1214 (1972); and *In Re Oahu Terminal Serv., Inc.*, 52 Haw. 221, 473 P.2d 573 (1970), we are bound to hold that the procedures followed by the board were contrary to the requirements set forth in HRS § 91-11, if we construe the term "final decision" to include an order denying a petition for reconsideration.

In our view, the term "final decision" as used in HRS § 91-11, means a decision on the merits of a case after a hearing thereon, in which the parties are given opportunity to present all the material evidence relative to the subject of the controversy, such decision determining the rights, duties or privileges of the parties involved in the proceedings. We do not believe that the term "final decision" was intended to apply to an order denying a petition for reconsideration of a substantive decision which takes effect without going through the safeguards provided in HRS § 91-11, because all the required officials participating in the "final decision" had heard the evidence. Under such circumstances, we hold that neither due process nor this statute would require a copy of the proposed order denying reconsideration be first served on the parties and also each adverse party be given an opportu-

nity to file exceptions and present argument before the proposed order takes effect.

Moreover, the language of HRS § 386-87(d) (1975 Supp.) vests in the board the discretionary power to grant a reopening of this decision and order.[4] HRS § 91-1(5) defines a "contested case" to be "a proceeding in which the legal rights, duties or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." Under HRS § 386-87(d) (1975 Supp.) the board has exercised its discretion and denied the appellants' petition for reconsideration. It was not required to give appellants a hearing before such a denial. Nor is there anything to indicate that such a denial was an abuse of discretion. Consequently, the requirements of HRS § 91-11 are inapplicable to a denial of a petition for reconsideration. This is not to say that HRS § 91-11 would be inapplicable if the petition for reconsideration is granted by the board. In that event it would be applicable if any member of the board did not participate in the agency hearing relative to the final disposition of the appeal.

There being no error in the record, the judgment is affirmed.

*W.K. Watkins, Jr.*, for employer-appellant and insurance carrier-appellant.

*Ralph E. Corey* for claimant-appellee.

---

[4] HRS 386-87 (1975 Supp.) states in pertinent part:

(d) In the absence of an appeal and within thirty days after mailing of a certified copy of the appellate board's decision or order, the appellate board may, upon the application of the director or any other party, or upon its own motion, reopen the matter and thereupon may take further evidence or may modify its findings, conclusions or decisions. The time to initiate judicial review shall run from the date of mailing of the further decision if the matter has been reopened. If the application for reopening is denied, the time to initiate judicial review shall run from the date of mailing of the denial decision.