NAM Y. CHUNG, Claimant-Appellee, *v.* ANIMAL CLINIC, INC., Employer-Appellant, and FIREMAN'S FUND AMERICAN INSURANCE CO., Insurance Carrier-Appellant

NO. 6696

CASE NO. AB 75-152 (75-4639)

SEPTEMBER 24, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM, JJ. AND CIRCUIT JUDGE ACOBA IN PLACE OF NAKAMURA, J., RECUSED

OPINION OF THE COURT BY LUM, J.

This is an appeal[1] brought by appellants Animal Clinic, Inc., and its insurance company from a decision of the Labor and Industrial Relations Appeals Board (Board) granting appellee Dr. Nam Y. Chung compensation benefits under Hawaii's Workers' Compensation Law (chapter 386, Hawaii Revised Statutes).

On December 23, 1974, Dr. Chung suffered a heart attack after office hours while jogging around the Kalani High School track. At

---

[1] Hawaii Revised Statutes, § 386-88, provides for direct appeals to the Supreme Court from the decision of the Labor and Industrial Relations Appeals Board.

the time of his heart attack, Dr. Chung was employed as the president of Animal Clinic, Inc. He was also the sole director and sole stockholder of the corporation.

Four issues are presented by this case: (1) whether Dr. Chung was an "employee" of his own professional corporation within the meaning of Hawaii's Workers' Compensation Law (HRS § 386-1) when he suffered his heart attack; (2) whether the Board applied the proper legal standard in determining whether Dr. Chung's heart attack arose out of and in the course of his employment, under HRS § 386-3; (3) whether the presumption contained in HRS § 386-85(1) that a claim is a covered work injury applies to this case; and (4) if the presumption applies, whether the appellants successfully rebutted the presumption with substantial evidence that the heart attack was not work-connected.

I.

Appellants' first argument is that Dr. Chung was not an "employee" of Animal Clinic, Inc., within the definition of HRS chapter 386, at the time he suffered his heart attack.

The essential prerequisite for coverage under Hawaii's Workers' Compensation Law is the existence of an employer-employee relationship. *Kepa v. Hawaii Welding Co.*, 56 Haw. 544, 549, 545 P.2d 687, 691 (1976); *Evanson v. University of Hawaii*, 52 Haw. 595, 598, 483 P.2d 187, 190 (1971). HRS § 386-1 (1976 & Supp. 1980) defines an "employee" as "any individual in the employment of another person" except where such employment is solely for personal, family, or household purposes. In addition, the statute makes it apparent that coverage under the law is dependent on the existence of a contractual relationship between the employer and the employee. HRS § 386-1, in pertinent part, provides:

"Employment" means any service performed by an individual for another person under any contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully entered into.

This statutory requirement of a contract between the employer and the employee has also been articulated in our case law. *See Evanson v. University of Hawaii, supra* at 598, 483 P.2d at 190.

At the hearing before the Board, an employment agreement,

dated March 12, 1973, was introduced into evidence. This agreement was between Animal Clinic, Inc., as employer and Dr. Chung as employee. Dr. Chung signed for Animal Clinic, Inc., as "its president"; he also signed as employee.

Appellants do not dispute the existence of this employment agreement between Dr. Chung and Animal Clinic, Inc., but they argue that "this so-called agreement is null and void" because Animal Clinic, Inc., should not be considered to have a legal existence separate from Dr. Chung for workers' compensation purposes. Appellants contend that because Dr. Chung had the sole authority to run the business and to define his own work and salary, and because he was the director, president, and sole stockholder, this court should "pierce the corporate veil" and find that Dr. Chung is the "alter ego" and not an "employee" of Animal Clinic, Inc.

The general rule is that a corporation and its shareholders are to be treated as distinct legal entities. The corporate "veil" will be pierced and the legal entity of the corporation will be disregarded only where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim. *Kahili, Inc. v. Yamamoto,* 54 Haw. 267, 271-72, 506 P.2d 9, 12 (1973); *Industrial Commission v. Lavach,* 165 Colo. 433, 437, 439 P.2d 359, 361 (1968).

There is a split of authority as to whether dominant or exclusive stock ownership and control of corporations is in itself reason to disregard the corporate entity.

One line of authority holds that the sole or major stockholder of a corporation who is also a corporate officer or runs the business as his or her own cannot sustain an employer/employee relationship with his or her corporation. *Martines v. Terminal Methods, Inc.,* 101 R.I. 599, 225 A.2d 790 (1967); *Roark v. Roark Motors Co.,* 196 Kan. 741, 413 P.2d 1019 (1966); *Duvick v. Industrial Commission,* 22 Wis.2d 155, 125 N.W.2d 356 (1963); *Leigh Aitchison, Inc. v. Industrial Commission,* 188 Wis. 218, 205 N.W. 806 (1925).

The other line of authority holds that dominant or exclusive stock ownership and control of corporations does not prevent a finding that such stockholders were employees. *Marlin Electric Co. v. Industrial Commission,* 33 Wis.2d 651, 148 N.W.2d 74 (1967); *Industrial Commission v. Lavach, supra; Gottleib v. Arrow Door Co.,* 364 Mich.

450, 110 N.W.2d 767 (1961); *Corcoran v. P. G. Corcoran Co.,* 245 Minn. 258, 71 N.W.2d 787 (1955).

In *Industrial Commission v. Lavach, supra,* the decedent was a joint owner with his wife of an incorporated business involved in moving, storage, and truck rentals. The Colorado Supreme Court held that when decedent died in an automobile accident while driving home in the company truck, the accident was compensable under Colorado workers' compensation law. The court stated:

> The fact that decedent owned all the stock in the corporation, standing alone, is insufficient grounds on which to base a denial of benefits under the Workmen's Compensation law. This court in Box v. Roberts, 112 Colo. 234, 148 P.2d 810, approved this rule in the following terms:
>
>> "* * * Even where all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons. * * *"
>
> The record in the instant case contains no evidence tending to show that Lavach conducted his business through the Company "as a means of accomplishing a fraud or an illegal act."

*Id.* at 437, 439 P.2d at 361.

We decide to follow the second line of authority. Under Hawaii law, there is no specified or minimum number of stockholders that is required for valid corporate existence. The fact that a sole or principal stockholder dominates a corporation violates no statutory requirement, is not opposed to public policy, and constitutes no fraud on creditors. Since we decide that exclusive stock ownership and control of corporations is not solely determinative on the issue of whether we should disregard the corporate entity, we must include other facts in our analysis.

There was an employment agreement between the employer and the claimant. During 1974, Animal Clinic, Inc., employed two veterinarians and 15 to 18 other full and part-time personnel. The record shows that the largest part of Dr. Chung's workdays were spent in clinical work, typical of any veterinarian in similar employment. Based on these facts, we find that there was a corporate entity which clearly functioned as an employer for a number of employees, in line with the terms of the employment contract.

The fact that Dr. Chung was the sole director, sole stockholder

and president of the corporation violates no requirements of our statutory law. There is no evidence that recognition of the corporate entity would bring about injustice or that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim. The corporate entity was valid and could properly enter into a contractual relationship with Dr. Chung as an employee. We conclude that Dr. Chung was an employee of Animal Clinic, Inc., on the date of his heart attack.

## II.

Appellants' second argument is that the Board applied an improper legal standard in determining whether Dr. Chung's heart attack arose out of and in the course of his employment with Animal Clinic, Inc. HRS § 386-3 entitles an injured employee to workers' compensation benefits only if the injury arises out of and in the course of the person's employment.[2] In its finding that Dr. Chung's heart attack was a covered injury, the Board, interpreting the statutory language, defined the test for whether an injury is covered as whether there was "a sufficient work connection to bring the accident within the Law. . . ." (Rec. on Appeal, pp. 155-56). Appellants contend that the correct test consists of two steps in which the elements "arising out of" and "in the course of" employment must both be separately established.

Courts have developed two approaches for determining whether injuries arise out of and in the course of employment. Under the traditional view, to which this court adhered in its early workers' compensation decisions, a claimant is required to establish that his injury arose both "out of" *and* "in the course of" his employment. *See Holt v. Acme Mattress Co.*, 40 Haw. 660 (1955); *Curtis v. Rivas*, 38 Haw. 384 (1949); *Chung Wong Chee v. Yee Wo Chan Co.*, 26 Haw. 785 (1923); *Silva v. Kaiwiki Milling Co.*, 24 Haw. 324 (1918). The words "out of"

---

[2] HRS § 386-3 (1976) provides, in pertinent part, as follows:
*Injuries covered.* If an employee suffers personal injury either by accident arising out of and in the course of the employment or by the disease proximately caused by or resulting from the nature of the employment, his employer or the special compensation fund shall pay compensation to the employee or his dependents as hereinafter provided.

are deemed to signify a causal connection between the injury and the claimant's employment, while the words "in the course of" point to the injury's proximity in time, place and circumstances to the employment. *Curtis v. Rivas, supra* at 389-90. Both components of the statutory formula must be separately established before compensation will be awarded. *Holt v. Acme Mattress Co., supra* at 667.

Beginning with *Royal State National Insurance Co. v. Labor & Industrial Relations Appeal Board,* 53 Haw. 32, 487 P.2d 278 (1971), however, this court moved towards adoption of the liberal, unitary concept of work-connection for interpreting the statutory requirement. The work-connection approach rejects the necessity of establishing temporal, spatial, and circumstantial proximity between the injury and employment. Instead, focusing on the injury's origin rather than the time and place of its manifestation, the work-connection approach simply requires the finding of a causal connection between the injury and any incidents or conditions of employment. *See Pacheco v. Orchids of Hawaii,* 54 Haw. 66, 77, 502 P.2d 1399, 1405 (1972) (Levinson, J., dissenting); *MK Rivers v. Schleifman,* 599 P.2d 132 (Alaska 1979); *City of Phoenix v. Industrial Commission,* 104 Ariz. 120, 449 P.2d 291 (1969). Professor Larson, in his treatise on workers' compensation law, cites the unitary approach as the correct rule for properly applying the workers' compensation statutes to allow benefits where appropriate. *See* 1A LARSON, WORKMEN'S COMPENSATION LAW § 29.22 (1979). Noting that the pertinent nexus is a causal, as opposed to a temporal or spatial one, he observed that

[t]he basic difficulty . . . lies in the inappropriateness of the "course of employment" test itself. The phrase serves well enough in *respondeat superior* cases, since there is always some act or omission by the servant which can be identified as having taken place within or without the scope of employment. But in Workmen's Compensation the controlling event is something done *to,* not *by,* the employee, and since the real question is whether this something was an industrial accident, the *origin* of the accident is crucial, and the moment of manifestation should be immaterial.

*Id.* at 5-375.

We initially indicated our acceptance of this unitary work-connection approach in *Royal State National Insurance Co., supra,* wherein we ruled that compensation should be awarded under HRS

§ 386-3 "if the injury reasonably appears to have flowed from the conditions under which the employee is required to work." 53 Haw. at 37-38, 407 P.2d at 281-82; *see Lawhead v. United Airlines,* 59 Haw. 551, 560, 584 P.2d 119, 125 (1978) ("an injury is compensable if it reasonably appears to have resulted from the working conditions").

Similarly, in *Akamine v. Hawaiian Packing & Crating Co.,* 53 Haw. 406, 495 P.2d 1164 (1972), we noted that the pertinent issue regarding whether the deceased employee's injury was covered was whether the injury in fact had been caused by his work activity, regardless of where or when the injury had taken place. *Id.* at 413, 495 P.2d at 1169. In concluding that the employee's fatal heart attack was work-related and therefore compensable, we stated:

> It is legally irrelevant, in determining the question of work-connection, whether Mr. Akamine's attack might have occurred at home, on the street or elsewhere while tending to his private affairs. The only consideration should have been whether the attack in fact was aggravated or accelerated by his work activity. . . .

*Id.* at 413, 495 P.2d at 1169; *see also DeFries v. Ass'n of Owners,* 57 Haw. 296, 308, 555 P.2d 855, 862 (1976) ("Under our workers' compensation statute, the slightest aggravation or acceleration of an injury by the employment activity mandates compensation," citing *Akamine*).

Further, in *Pacheco v. Orchids of Hawaii, supra,* we warned that the scope of HRS § 386-3 should not be unduly restricted and again spoke in terms of a work-connection test. The work-connection language was not negated by this court's focus on the temporal and spatial relationship between the employee's injury and her job, since the injury, occurring during a coffee-break, was not otherwise causally related to the conditions of her employment.

On the basis of the foregoing authority, we now conclude that the unitary work-connection approach is the correct one for interpreting and applying HRS § 386-3 in a way which fairly carries out the purposes of Hawaii's workers' compensation laws. As we have previously observed, "the legislature has decided that work injuries are among the costs of production which industry is required to bear. . . ." *Akamine, supra* at 409, 495 P.2d at 1166. Inequity would easily result from a rule which denied compensation for injuries having their inception at work but not becoming manifest until the employee had left the employer's premises. *See* LARSON, *supra* at §§

29.10-29.22. We therefore hold that the Board properly utilized the work-connection test in deciding whether Dr. Chung's heart attack arose out of and in the course of his employment.

### III.

The final issues are whether the presumption contained in HRS § 386-85(1) that a claim is for a covered work injury becomes operative only after some proof that the injury occurred "in the course of employment"; and, if not, whether appellants succeeded in rebutting the presumption with substantial evidence that Dr. Chung's heart attack was not work-connected. The Board concluded that the claimant had adduced sufficient evidence to establish a causal connection between his heart attack and his employment activity. Additionally, it found that the statutory presumption applied and had not been successfully rebutted, and therefore that an award of compensation was appropriate. We agree.

HRS § 386-85(1) creates a presumption in favor of the claimant that the subject injury is causally related to the employment activity.[3] As we previously explained in *Akamine,* this presumption imposes upon the employer both the heavy burden of persuasion and the burden of going forward with the evidence. 53 Haw. at 408, 495 P.2d at 1166. The claimant must prevail if the employer fails to adduce substantial evidence that the injury is unrelated to employment. The term "substantial evidence" signifies a high quantum of evidence which, at the minimum, must be "relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable man that an injury or death is not work connected." *Id.* at 408-9, 495 P.2d at 1166; *Survivors of Timothy Freitas v. Pacific Contractors Co.,* 1 Haw. App. 77, 85, 613 P.2d 927, 933 (1980).

The statute nowhere requires, as appellants suggest, some preliminary showing that the injury occurred "in the course of employment" before the presumption will be triggered. Rather, HRS §

---

[3] HRS § 386-85(1) (1976) provides:

*Presumptions.* In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury. . . .

386-85 clearly dictates that coverage will be presumed at the outset, subject to being rebutted by substantial evidence to the contrary. This is so in all claims proceedings, regardless of the existence of conflicting evidence, as the legislature has determined that where there is a reasonable doubt as to whether an injury is work-connected, it must be resolved in favor of the claimant. *Akamine, supra* at 409, 495 P.2d at 1166.

Appellants contend that the statutory presumption of work coverage was rebutted by substantial evidence in the form of Dr. Chesne's testimony attributing the heart attack to pre-existing arteriosclerosis and physical exertion from jogging. Dr. Chesne additionally testified that the cause of Dr. Chung's heart disease was unknown, and denied that work stress contributed to the heart attack. Dr. Min, on the other hand, believed that Dr. Chung's employment activities as principal veterinarian, administrator and president of Animal Clinic, Inc., which engaged Dr. Chung for long hours, as well as his other business-related activities, generated a substantial amount of mental and emotional stress which is strongly linked to the production of heart disease.

The Board found Dr. Min's testimony sufficient to establish a work-connection, and ruled that the employer had failed to produce substantial evidence establishing a contrary result. That Dr. Chung had been jogging when the attack occurred was not, of itself, of sufficient weight to defeat the presumption. In view of the directly conflicting evidence on the nature of Dr. Chung's heart disease and the role work stress may or may not have played, the Board, relying upon the statutory language, resolved the issue in favor of the claimant.

The standard of review governing this court's examination of the Labor and Industrial Relations Appeals Board's decision is contained in Hawaii's Administrative Procedure Act, which provides, in pertinent part, that "the court may . . . affirm . . . or reverse . . . the decision and order of an administrative body if . . . the administrative findings, conclusions, . . . or orders are: . . . (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . ." HRS § 91-14(g) (1976); *DeFries v. Ass'n Owners, supra* at 302, 555 P.2d at 859; *De Victoria v. H & K Contractors*, 56 Haw. 552, 556, 545 P.2d 692, 696-97 (1976). The "clearly erroneous" standard requires the court to sustain the Board's findings

unless the court is "left with a firm and definite conviction that a mistake has been made." *Id.* at 557-58, 545 P.2d at 697-98.

Applying this standard to the present case, we cannot conclude that the Board erred in deciding that Dr. Chung's heart attack was work-connected. The testimony of the two doctors directly conflicted on the issue of the heart attack's causal connection to Dr. Chung's employment activity. In such cases, as stated above, the legislature has decided that the conflict should be resolved in the claimant's favor. This is so especially in view of the special weight accorded the statutory presumption in the cases of heart disease, where the precise causes of the disease are particularly difficult to ascertain. *Akamine, supra* at 408-9, 495 P.2d at 1166.

Our decision in *Akamine* provides ample support for this conclusion. In *Akamine,* we discussed the distinction between the etiology of heart disease and legal causation, noting that definition of the latter rests solely with the legislature and the courts, not with medical experts.

> For "a medical man may give a generalized opinion that there was no connection between an incident at work and a heart attack, and, in his own mind, may mean thereby that a pre-existing pathological condition was the overwhelming factor in bringing about the attack and that the part played by the work was insignificant. But, while it may be sound medically to say that the work did not 'cause' the attack, it may well be bad law, because, in general, existing law treats the slightest factor of aggravation as an adequate 'cause.' " McNiece, Heart Disease and the Law 135 (1961).

53 Haw. at 410, 495 P.2d at 1167. The primary focus of medical testimony for the purposes of determining legal causation should be whether the employment situation in any way contributed to the employee's injury. *Id.* at 412, 495 P.2d at 1168. Testimony that a pre-existing heart disease may have been a contributing or precipitating cause of the heart attack should be accorded little probative weight. *Id.* The only relevant inquiry is whether Dr. Chung's heart attack in fact was aggravated or accelerated by his work activity. *Id.* at 413, 495 P.2d at 1169.

We are satisfied that the Board's conclusion that Dr. Chung's heart attack was in fact causally related to his employment is supported by the applicable law and the record.

The judgment of the Board is sustained.

*Roland Q. F. Thom (Char, Hamilton, Taylor & Thom), (Roy A. Vitousek* with him on the briefs, *Donald A. Beck* with him on opening brief, *Cades Schutte, Fleming & Wright* of counsel) for employer-appellant and insurance carrier-appellant.

*Hideki Nakamura (Lowell K. Y. Chun-Hoon* with him on the brief, *King, Nakamura & Takahashi* of counsel) for claimant-appellee.