No. 85-237

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

KATHRYN ALBERT OGREN, Beneficiary of
ERIK R. OGREN, Deceased,

        Claimant and Appellant,

    vs.

BITTERROOT MOTORS, INC.,

        Employer,

    and

ORION GROUP, INS.,

        Defendant and Respondent

---

APPEAL FROM: Workers' Compensation Court, State of Montana,
            The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Snavely and Philips, P.C.; Donald V. Snavely and
        Robert S. Marcott, Missoula, Montana,

    For Respondent:

        Garlington, Lohn and Robinson; Larry Riley,
        Missoula, Montana.

---

Submitted on Briefs: March 28, 1986

Decided: August 12, 1986

Filed: AUG 12 1986

*Ethel M. Harrison*
_____
              Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Kathryn Ogren, claimant and beneficiary of Erik Ogren, brought this action in the Workers' Compensation Court seeking to recover workers' compensation benefits for the death of her husband. Subsequent to the trial, the court issued its findings of fact and conclusions of law wherein it held that Erik Ogren was not acting within the course and scope of his employment at the time of the fatal car accident. Judgment was entered denying claimant's petition for benefits, and claimant appeals. We affirm.

The basic facts of this case are not in dispute and were admitted by stipulation. Erik Ogren was President-Owner and General Manager of Bitterroot Motors, Inc. (Bitterroot), located in Missoula, Montana. Bitterroot, respondent herein, was enrolled in a workers' compensation plan under a policy issued by Orion Group, Inc., also the respondent. Appellant was married to Erik at the time of the accident.

On the morning of Friday, July 13, 1984, Bill Petritz, then the Comptroller for Bitterroot, asked Erik for permission to leave early that day. Petritz wanted to go to Great Falls primarily to attend a family reunion. He had planned also to pick up his father's car and drive it back to Missoula to have some work done on it at Bitterroot Motors. Erik told Petritz that he could leave early. However, that day was one of the busiest on record for the dealership, and Petritz was unable to leave when he had planned to. Around noon, Erik offered to fly Petritz to Great Falls in the company plane so that Petritz could work until 5:00 p.m., and he accepted.

At the same time, Erik's daughter, Kristi Ogren, was attending a beauty pageant function in Sheridan, Wyoming. Originally, Kristi was supposed to leave Sheridan by bus

Friday night and arrive in Billings. From there, she was to take a commercial flight to Missoula. However, during the early afternoon of the 13th, Erik told appellant that he was flying to Great Falls and that he might be able to go on to Sheridan to pick up Kristi. Before he left for Great Falls, Erik called appellant again to tell her that he definitely was going to Sheridan to pick up their daughter after dropping Petritz off in Great Falls.

Appelant testified that prior to the 13th, she and Erik had talked about Erik flying down to Sheridan to pick up Kristi, but he said that he could not do it. However, Petritz stated to an insurance adjuster shortly after the accident that when he and Erik first discussed the trip to Great Falls, Erik said: "Well, I have to go out anyway, maybe I will just drop you off in Great Falls." Although at trial Petritz could not specifically remember Erik making that statement, he did remember relating that statement to the adjuster and believed that Erik could have made that statement.

Erik and Petritz left Missoula in the company plane at around 5:00 Friday afternoon. After stopping in Great Falls to let off Petritz, Erik flew on to Sheridan. The plane developed engine trouble at the Sheridan airport, and Erik decided to rent a car and drive home. After picking up Kristi, they drove to Billings where Erik phoned his wife. She strongly suggested that they stay at a motel for the night but Erik refused, stating that he must get back to Missoula because he had a business meeting at 10:00 Saturday morning. Erik and Kristi left Billings around 1:00 Saturday morning; however, Erik fell asleep only a few miles outside of Missoula and lost control of the car. Both Erik and Kristi were killed when they were thrown from the car.

3

The only issue raised on appeal is whether Erik Ogren was killed while he was acting in the course and scope of his employment with Bitterroot.

The general standard to be applied in determining whether an employee is entitled to workers' compensation benefits is provided by § 39-71-407, MCA:

> Every insurer is liable for the payment of compensation . . . to an employee of an employer it insures who receives an injury arising out of and in the course of his employment or, in the case of his death from such injury, to his beneficiaries, if any.

It is the application of this broad standard to the facts of particular cases that often proves difficult; however, this case does not present such a problem.

Appellant readily admits that the plane trip from Great Falls to Sheridan, Wyoming, was a purely personal trip. She could not logically argue otherwise. Kristi Ogren was not employed by Bitterroot, nor did she have any connection with it other than having a father who was employed there. Moreover, Erik's only purpose in going to Sheridan was to pick up his daughter so that she would not have to travel home alone. Thus, it is undisputed that when Erik flew from Great Falls to Sheridan, he was not acting within the scope of his employment.

Appellant contends, however, that Erik's trip from Missoula to Great Falls was in the course of his employment, as was his trip from Sheridan back to Missoula. Since he was killed while performing some reasonably immediate service to his employer (i.e., driving to Missoula in order to meet a business appointment), appellant is entitled to workers' compensation benefits. Appellant also contends that her husband's death is compensable under the deviation rule, the dual purpose rule, and the going and coming rule. We cannot agree with appellant's analysis on any of these theories.

4

In construing what "arising out of and in the course of his employment" means, the general principle that has developed was first enunciated in Morgan v. Industrial Accident Board (1958), 133 Mont. 254, 321 P.2d 232, and reaffirmed recently in Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450. The Court in Morgan stated:

> What is the underlying principle? In cases where some reasonably immediate service to the employer can be discerned the claim has been sustained. Where there has been no reasonably immediate service, the claim has been denied. Such impresses us as a fundamental rule and guide for the liberality to which this court is necessarily and properly committed . . .

Morgan, 321 P.2d at 236. Thus, the question to be decided in this case is: Did Erik Ogren perform some reasonably immediate service to his employer when he flew to Sheridan to pick up his daughter and then drove through the night back to Missoula?

As stated earlier, the trip from Great Falls to Sheridan had no connection of any kind with Erik's employment. Moreover, it is just as certain that the trip from Sheridan to Missoula was not made in the course and scope of his employment. The fact that he was going to Missoula to attend a business meeting is not sufficient, standing alone, to bring him within the ambit of his employment. Saturday was a regular work day for Erik and the meeting was at his usual place of work. Further, he was certainly planning to go home first to drop off Kristi before leaving for his meeting. If he had been out of town on a personal weekend trip and had to be back at work Monday morning, and was involved in a car accident during the night while driving back to town, there would be no question that the accident would not be within the scope of his employment. The situation before us is not materially different from the

5

one given in the example. The service that Erik was performing for his employer in driving to Missoula to attend a business meeting at his regular work place on a regular workday is the same as the service that every other employee performs in driving to his usual place of work. However, this Court has consistently held that the "going and coming rule" is a "well-established principle in Workers' Compensation law which denies compensation benefits for injuries sustained by an employee traveling to or from the regular work place." Courser v. Darby School Dist. No. 1 (Mont. 1984), 692 P.2d 417, 418, 41 St.Rep. 2283, 2285.

Appellant attempts to bring her case under the exceptions to the "going and coming rule." Those exceptions were set forth in Hagerman v. Galen State Hospital (1977), 174 Mont. 249, 251, 570 P.2d 893, 894, wherein the Court stated:

> Throughout the years this State has had workers' compensation, this Court has considered a number of cases where injuries were sustained going to or coming from work and has found no recovery unless employee travel pay was covered under the employment contract or that travel allowance was for travel for the special benefit of the employer.

See also, Correa v. Rexroat Tile (Mont. 1985), 703 P.2d 160, 42 St.Rep. 1075. The fact that the expenses for operating the company plane and for renting the car were paid for by the employer does not mean that Erik's travel pay was covered under an employment contract. No evidence was submitted of an employment contract between Erik and Bitterroot which specifically authorized that Erik be paid a definite travel allowance in connection with his employment. Rather, this seems to be simply a situation where the president of a company has a company credit card and uses it at his discretion, which is not sufficient, by itself, to come within the exception to the general rule. Furthermore, the trip from Sheridan to Missoula was not made for the special benefit of

6

the employer. It is hard to imagine how traveling to one's regular work place on a regular workday can be for the special benefit of an employer. Therefore, appellant does not fall within either exception to the "going and coming rule."

Appellant goes to great lengths to show that the flight from Missoula to Great Falls was for a business purpose so that the personal trip to Sheridan can be viewed as merely a minor deviation from a trip with an overall business purpose. Considering Petritz's testimony that at the time Erik offered to fly Petritz to Great Falls, Erik stated that he had to go out anyway, the fact that Erik's purpose in flying Petritz to Great Falls was more of a friendly gesture than truly business motivated, and the strong likelihood that the entire trip was motivated by the desire to pick up Kristi in Sheridan, we have serious doubts whether the trip to Great Falls was one within the course and scope of Erik's employment. However, it is unnecessary to decide that question because it is clear that the trip from Great Falls to Sheridan and then to Missoula was not one arising out of his employment.

The benefit, if there was any, received by Bitterroot from the trip to Great Falls ended once Erik let Petritz off at the airport. Erik performed no service of any kind for Bitterroot when he flew to Sheridan to pick up Kristi nor did he perform any reasonably immediate service in driving through the night in order to arrive in Missoula by morning. It is a strain on reason to accept the argument that the decedent was performing some reasonably immediate service to his employer in going to Sheridan for a purely personal reason and in driving to his home to drop off his daughter before he left for work. Therefore, we hold that Erik was not killed while performing some reasonably immediate service to his employer.

7

Appellant contends that the deviation rule also supports her claim for benefits. We disagree.

It is true that if Erik had gone to Great Falls for the "special benefit" of his employer, the return trip back to Missoula would have been within the course and scope of his employment. Under the deviation rule, if an employee leaves the area or route where his job requires him to be to pursue an objective solely to benefit himself, the employment connection is severed throughout the deviation. If the employee returns to his employment from the deviation and is subsequently injured, his injuries would be compensable under workers' compensation. See Steffes, supra. However, if a deviation is found to be substantial or major, the employment relation is completely severed, and the employee cannot re-enter the scope of employment even though he is proceeding home from a trip that was originally employment motivated. Other jurisdictions considering this issue have found this rule applicable under the facts presented.

In Calloway v. State Workmen's Compensation (W. Va. 1980), 268 S.E.2d 132, the claimant was employed as an outside salesman and was sent with a fellow employee to another county to solicit business. The claimant made a business call while in the county and then began to visit relatives and have a few drinks at various taverns. Around 11 p.m. he started home, but before he reached his home, he was involved in a car accident. In denying compensation to the claimant, the court stated:

> In the case of a major deviation from the business purpose, most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose and consequently cannot recover for injuries received, even though he has ceased the deviation and is returning to the business route or purpose. (Emphasis added.)

8

Calloway, 268 S.E.2d at 135.  See also Bush v. Parmenter, Forsythe, Rude, and Dethmers (Mich. 1982), 320 N.W.2d 858; Carter v. Burn Construction Company, Inc. (N.M. 1973), 508 P.2d 1324; Hebrank v. Parsons (N.J. 1965), 212 A.2d 579.

The determination of whether a deviation is substantial or not depends upon the particular facts of each case. Factors important in arriving at this determination include: (1) the amount of time taken up by the deviation; (2) whether the deviation increases the risk of injury; (3) the extent of the deviation in terms of geography; and (4) the degree to which the deviation caused the injury. Applying these factors to the facts of the case before us, we find the deviation to be substantial.

First, the deviation was substantial in relation to time.  Erik left Great Falls around 6 p.m. on a Friday evening going toward Sheridan.  He did not return to the business route from the deviation until 5 a.m. Saturday morning -- a deviation in time of around eleven hours. Appellant contends that if the plane had not broken down in Sheridan, the deviation would have lasted only a couple of hours.  That may be true; however, we cannot resolve the issues before us on the basis of what might or could have been.  We must look to the facts as they actually occurred. Under the facts presented, the deviation lasted eleven hours.

Second, the deviation substantially increased the risk of injury to Erik.  Had he left Great Falls in the plane and gone directly back to Missoula, Erik would have arrived in Missoula at around 7 p.m.  Even if he had taken a car from Great Falls to Missoula, he would have arrived at around 9 p.m.  However, because Erik went to Sheridan on a personal mission, he had to drive through the night after working hard all day in order to get back to Missoula by Saturday morning. He had to fly and drive an extra eleven hours just for the

9

deviation which obviously contributed to his falling asleep while driving. Thus, the deviation greatly increased the risk of injury to Erik.

Third, the deviation was substantial in relation to geography. It is approximately 336 highway miles for a round trip from Missoula to Great Falls. However, the total mileage of the deviation was approximately 744 highway miles -- over twice the distance of the business trip. This is clearly a case where the personal deviation completely dwarfed the business purpose.

Fourth, the deviation was the direct cause of the accident. Erik fell asleep at the wheel of his car after driving almost ten hours through the night. The only reason that Erik had to drive so long was because he went to Sheridan to pick up his daughter. Thus, the business trip to Great Falls had little connection with Erik's death.

Therefore, since the deviation involved here was substantial, the employment relation was completely severed, and Erik could not re-enter the course of his work. The fact that he was proceeding home and was killed while on the original business route is not relevant since the business purpose of the trip had been abandoned.

Finally, appellant contends that the dual purpose rule also applies to allow recovery. This assertion is without merit. There was no dual purpose in Erik's going to Sheridan; there was only one purpose and it was personal. Bitterroot did not compel Erik to go to Sheridan. He undertook that trip solely to benefit his family. Under the dual purpose doctrine, an employee is within the scope of his employment when he is traveling on some substantial mission for his employer, even though he may simultaneously be on a personal errand. Steffes, supra. Erik was not on any

mission, substantial or otherwise, for his employer subsequent to the time he left Great Falls.

As a final word, it should be noted that we decide this case based solely on the facts presented before us. What may be a reasonably immediate service of the employee in one case may not be so in another depending on the particular facts presented. Likewise, what may be a deviation in one case may not be so in another. Particularly in this area of the law, the facts of the individual case determine the result for that case. With this said, the judgment of the Workers' Compensation Court denying benefits to appellant is affirmed.

Chief Justice

We concur:

Justices

Mr. Justice William E. Hunt, Sr., dissenting:

I dissent.

The decedent, Erik Ogren, was killed in the course and scope of employment under the dual purpose and deviation rules.

The dual purpose rule is defined as follows:

> Under the dual purpose doctrine, an employee may, while traveling, be on an errand of his own, but if he is at the same time on some substantial mission for his employer, he may be said to be within the course of his employment. If the work of the employee creates the necessity for travel, the employee is in the course of his employment though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, i.e., if the journey would have gone forward though the business errand had been dropped and would have been cancelled upon failure of the private purpose though the business errand was undone, the travel is personal and not in the course of employment.

N. Grossfield, Montana Workers' Compensation Manual, § 4.24 at 21 (1979).

Ogren offered to fly an employee, Petritz, to Great Falls so that the employee could work a full day and still attend a family reunion. Kathryn Ogren testified that Erik discussed the trip with her on Friday afternoon. He stated that Petritz needed to go to Great Falls but was also needed at work, so he was flying Petritz to Great Falls and could possibly pick up their daughter in Sheridan. Clearly, this trip meets the definition of the dual purpose rule. The necessity to travel was created by the work of the employee. Petritz was needed in Missoula, but also needed to get to Great Falls that day. Petritz testified he believed Erik had said he was going to take the trip anyway. However, from the record I cannot agree that "the journey would have gone forward though the business errand had been dropped and would

12

have been cancelled upon failure of the private purpose though the business errand was undone." The purpose of the trip was dual: to enable Petritz to work a full day in Missoula and still attend a reunion in Great Falls; and, to pick up Ogren's daughter in Sheridan and bring her to Missoula. Since Ogren's trip involved a substantial benefit to his employer, the trip was within the course and scope of his employment.

Ogren should also recover under the deviation rule. That rule is defined as follows:

> Under the deviation rule, when an employee departs from the area where his job requires him to be to pursue an objective which is not essential or incidental to any service he is being paid to perform, the continuity of the employment is severed, and remains severed until he returns to the point of deviation from the path of duty. The character of the employee deviation, whether pronounced or relatively inconsequential, and the materiality and purpose thereof, are given consideration in determing the applicability of the rule. Equal consideration is also given to the reasonableness of the employee's behavior in the light of all the circumstances, and whether the deviation caused or contributed to the injuries suffered. Time and space are considered in determining whether the rule is applicable. A line of demarcation between the disqualifying deviation and one which does not disqualify is ordinarily a matter of judgment for the trier of fact.

N. Grossfield, _Montana Workers' Compensation Manual_, § 4.25 at 21-22 (1979).

The majority holds that Ogren's trip from Great Falls to Sheridan was such a major deviation as to totally sever the employment connection. I disagree. Clearly the trip from Missoula to Great Falls was for a business purpose. The trip from Great Falls to Sheridan was a deviation, but not such a major deviation as to totally sever the business connection.

Ogren was travelling in a twin engine airplane capable of covering the 280 air miles from Great Falls to Sheridan in

less that 90 minutes. Had he not had engine trouble in Sheridan, and been able to fly back to Missoula there would have been no need to travel without rest in order to reach Missoula in time to be at his employment as he planned to do when he left on the trip. Such a deviation did not totally sever the business connection. Once Ogren began the trip back to Missoula, the deviation ended and he was once again in the course and scope of his employment.

This case is similar to a case cited by the majority, Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450. In Steffes, an employee travelled from Missoula to Seeley Lake to exchange an automobile for that belonging to a customer. In Seeley, the employee met the customer in a bar and spent several hours drinking. He then discovered the car he was driving had been stolen. The employee left Seeley with a friend and headed toward Missoula. He was involved in an automobile accident on the way and was killed. Although the employee intended to spend the night in Seeley, he wanted to return to Missoula to look for the missing car. We held that his death was compensable. The employee fell within the purview of the dual purpose rule and we held that "the evidence shows that Steffes' trip back to Missoula was for the benefit of his employer and he was acting in the course and scope of his employment at the time of his death."

Similarly, Ogren's trip to Great Falls was for the benefit of his employer and in the course and scope of his employment. While the trip to Sheridan was a deviation, the deviation ended when Ogren started back toward Missoula. Kathryn Ogren testified that she suggested Ogren remain in Billings overnight given the lateness of the hour. Ogren refused, stating he had to be in Missoula by 10:00 the

14

following morning for a business meeting. The drive to Missoula in the early morning hours of July 14, 1984, was for the benefit of the employer, and he was acting within the course and scope of his employment at the time of his death.

I would reverse the Workers' Compensation Court.

_____
Justice

We concur in the foregoing dissent of Justice Hunt:

_____
Justice

_____
Justice

15