59 P.3d 920

**Richard S. KAWAKAMI,**
**Claimant–Appellant,**

v.

**CITY AND COUNTY OF HONOLULU,**
**BOARD OF WATER SUPPLY, Em-**
**ployer–Appellee, Self–Insured.**

No. 24523.

Supreme Court of Hawai'i.

Dec. 24, 2002.

Ronald G.S. Au and Gerald H. Kurashima, Honolulu, for claimant-appellant.

Paul Au, Deputy Corporation Counsel, for employer-appellee, self-insured.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ., and ACOBA, J., Dissenting.

Opinion of the Court by RAMIL, J.

## I. *INTRODUCTION*

Claimant–Appellant Richard S. Kawakami appeals the decision and order of the Labor and Industrial Relations Appeals Board ("Board") denying his claim for worker's compensation benefits for an injury sustained by Kawakami while operating a vehicle owned by his employer, the City and County of Honolulu Board of Water Supply ("BOWS").

On appeal, Kawakami argues that the Board erred by: (1) failing to apply the presumption of worker's compensation coverage under Hawai'i Revised Statutes ("HRS") § 386–85 (1993); (2) concluding that Kawakami had "substantially deviated" from his employment; and (3) concluding that Kawakami made a "second deviation" when he turned around to look for Ms. Onaga. For reasons discussed below, we affirm the decision and order of the Board.

## II. *BACKGROUND*

Kawakami was employed with BOWS as a senior construction inspector. His normal work day lasted from 7:00 a.m. to 3:30 p.m. BOWS's construction supervisors are provided company vehicles for the purpose of traveling between the baseyard and job site and for performing daily work responsibilities. Supervisors pick up their assigned vehicles from the baseyard at the start of the day and are required to return the vehicle to the baseyard at the end of their work day. If an employee returns the BOWS vehicle after 5:30 p.m. as a result of overtime work, the

employee checks in at the Control Center to obtain the gate key, parks the BOWS vehicle, and returns the gate key to the Control Center.

This dispute arose out of an accident that occurred on June 18, 1997 while Kawakami was operating his assigned company vehicle after work hours. On the day of the incident, Kawakami was assigned to a job site in Ka'a'awa. That morning, Ms. Jane Onaga ("Onaga"), Kawakami's then girlfriend, dropped Kawakami off for work at the baseyard on Beretania Street. Kawakami picked up his assigned vehicle and proceeded to the Ka'a'awa job site. At around 2:30 p.m., Kawakami called Onaga in response to a page he received. Onaga explained that a sewer line on her Wai'anae property was backing up and asked whether Kawakami could help resolve the problem. After securing the Ka'a'awa job site, Kawakami went to Wai'anae to correct the sewer line problem. Because the repair took longer than expected, the couple ate dinner, Kawakami consumed two beers, and Kawakami took a nap. At approximately 10:00 p.m., Kawakami woke up and instructed Onaga on which route he planned to take to return the BOWS vehicle. Onaga planned to follow Kawakami to the Beretania Street baseyard and take him home after he dropped off the BOWS vehicle. The couple then proceeded towards the baseyard. While traveling on Pa'akea Street, Kawakami noticed that there were no headlights behind him. Concerned about Onaga's well-being, Kawakami proceeded down Hakimo Road to Farrington Highway where he took a right turn heading back towards Wai'anae and away from the baseyard. While traveling west on Farrington Highway, Kawakami was struck by a car traveling in the opposite direction at approximately 11:50 p.m.

On April 21, 1998, BOWS filed an Employer's Report of Industrial Injury (WC–1) denying liability for Kawakami's claim of injury on June 18, 1997. On June 18, 1999, Kawakami filed an Employee's Claim for Worker's Compensation Benefits (WC–5). The Department of Labor and Industrial Relations Disability Compensation Division ("DCD")

held a hearing to determine compensability of Kawakami's injuries and denied his claim.

Kawakami appealed to the Board. The Board ruled that Kawakami's injuries were not compensable because Kawakami substantially deviated from the scope of employment when he left work to embark on a personal errand, and, accordingly, was not capable of re-entering the scope of employment when the accident occurred. The Board specifically ruled:

We have found that the initial deviation was substantial in this case, based on the fact that Claimant, who had a fixed work schedule and a fixed workplace, was, at the time of the accident, outside the boundaries of his employment in terms of time and space, the number and nature of the personal activities engaged in by Claimant between his last work activity and the accident, and the fact that the deviation played a role in Claimant's injuries, because it was the deviation and not the work that brought Claimant to Waianae and to the site where the accident occurred. Given our finding of substantial deviation, we conclude that the 10:00 p.m. trip to Honolulu to return Employer's vehicle, which was delayed by at least seven hours, lost its business character and any work connection that the trip to return Employer's vehicle may have had was severed by the initial deviation.

The Board further held that, even assuming Kawakami had re-entered the scope of employment when he headed toward Honolulu to return the vehicle to BOWS, the accident occurred during a second deviation, commencing when Kawakami turned away from the direction of the baseyard to search for Onaga. Kawakami appealed the Board's decision, and oral arguments were heard on November 13, 2002. Upon carefully reviewing the record and briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we affirm the Board's decision to deny compensation.

### III. *STANDARD OF REVIEW*

 Review of the Board's decisions is governed by HRS chapter 91 (1993). Find-

ings of fact are reviewed under the clearly erroneous standard. *Tate v. GTE Hawaiian Telephone Co.*, 77 Hawai'i 100, 102, 881 P.2d 1246, 1248 (1994). Conclusions of law are not binding on an appellate court and are freely reviewable for correctness. *Id.* Thus, the *de novo* standard of review is applied to conclusions of law. *Id.*

## IV. ANALYSIS

■ The issue of compensability of work-related accidents is governed by HRS § 386-3 (1993), which provided in relevant part:

> **Injuries Covered.** If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as provided in this chapter.
>
> Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.

In all compensability cases, we are guided by the unitary test, which considers

> whether there is a sufficient work connection to bring the accident within the scope of the statute. First articulated in *Royal State National Insurance Co. v. Labor and Industrial Relations Appeal Board*, 53 Haw. 32, 487 P.2d 278 (1971), the work connection approach simply requires the finding of a causal connection between the injury and any incidents or conditions of employment.

*Tate*, 77 Hawai'i at 103, 881 P.2d at 1249 (citations omitted). The "unitary test" was formally adopted by this court in *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 636 P.2d 721 (1981). In addition, HRS § 386-85 (1993) expressly provides a presumption in favor of employees that a claim for worker's compensation is compensable. Thus, to rebut the claim, an employer must provide "substantial evidence" that the injury is not work-related. *Royal State*, 53 Haw. at 34-

35, 487 P.2d at 280; *Acoustic, Insulation & Drywall, Inc. v. Labor & Industrial Relations Appeal Board*, 51 Haw. 312, 316, 459 P.2d 541, 544, *rehearing denied*, 51 Haw. 632, 466 P.2d 439 (1970).

## A. Substantial Deviation

■ BOWS adduced substantial evidence that Kawakami left the scope of employment to embark on a purely personal and unauthorized journey. Kawakami argues, however, that he re-entered the course of employment over seven hours later when he attempted to return the BOWS vehicle to the Beretania Street baseyard. The Board ruled that Kawakami was precluded from re-entering the course of employment because his deviation was substantial, thus severing any work connection. We agree with the Board's analysis and hold that Kawakami is precluded from compensability under the doctrine of substantial deviation.

■ Within the unitary test, the deviation doctrine teaches that when an employee departs from his normal job duties on a personal errand that serves no purpose of the employer, there is no longer a work connection and any injury sustained during that deviation will not be compensable. *See Larson's Workers' Compensation Law* § 17.03[1] (2002) ("When an employee deviates from the business route by taking a side-trip that is clearly identifiable as such, the employee is unquestionably beyond the course of employment while going away from the business route and toward the personal objective[.]" (Footnote omitted.)). The question whether the return trip from the personal deviation is covered, however, is unsettled. "The majority of compensation cases deny recovery in these circumstances, on the ground that a side-trip is a personal deviation until completed[.]" *Larson's* § 17.03[3]. Thus, until the employee resumes his normal work route, the personal deviation is not complete and any injury sustained during that interval is not compensable.

Many employees, however, especially those who are provided the use of a company car, may engage in substantial personal activities temporally and spatially remote from their work. These situations raise the question

whether an employee can re-enter the course of employment after such a major deviation.

Some jurisdictions have held that when an employee undertakes

a major deviation, major because of its duration in time or because of its nature, or both, it can be said that as a matter of law he has abandoned his employment. Then, regardless if he returns to the route of the business trip, this does not in and of itself return him to the scope of employment and an injury occurring after this does not arise out of or in the course of his employment.

*Carter v. Burn Construction Company,* 85 N.M. 27, 508 P.2d 1324, 1327 (N.M.Ct.App. 1973); *see also Ogren v. Bitterroot Motors, Inc.,* 222 Mont. 515, 723 P.2d 944, 948 (1986) (holding that if a deviation is substantial, the employment relation is completely severed, and the employee cannot re-enter the scope of employment); *Kodiak Oilfield Haulers v. Adams,* 777 P.2d 1145, 1149 (Alaska 1989) (holding that a five-day delay to visit family before returning home "represented a noncompensable deviation from an otherwise compensable trip[,]" and, thus, injury sustained on the return trip was not compensable); *Hebrank v. Parsons, Brinckerhoff, Hall & MacDonald,* 88 N.J.Super. 406, 212 A.2d 579 (1965) (holding that an eleven-hour deviation in employer's car was a total abandonment of employment, and the fact he was returning the car did not operate to restore the coverage lost).

■ The foregoing view has been adopted by the leading treatise on worker's compensation, *Larson's Workers' Compensation Law.*

An employee who has the right to have his homeward journey covered cannot, so to speak, put that right in the bank indefinitely and cash it at whatever future time suits his convenience. The sheer amount of time elapsed is bound to influence courts in these cases.... Other factors ... include the amount of risk added by the personal activities, such as drinking, the nature of the job, and the extent to which there may be found an identifiable moment in time at which work duties end and the clock begins to run on the deviation.

*Larson's* § 17.02[9][b] (footnotes omitted) (emphasis added). We agree with the apparent majority view, which precludes compensability of injuries sustained by employees who deviate so significantly from their work that it constitutes an abandonment of their duties.

In determining whether a deviation is substantial, courts have looked at the following factors: "(1) the amount of time taken up by the deviation; (2) whether the deviation increases the risk of injury; (3) the extent of the deviation in terms of geography; and (4) the degree to which the deviation caused the injury." *Ogren,* 723 P.2d at 948; *see also Calloway v. State Workmen's Compensation Commissioner,* 165 W.Va. 432, 268 S.E.2d 132, 135 (1980) (stating that the longer the deviation or the greater it varies geographically from the normal business route, the more likely that it will be characterized as major); *Kodiak,* 777 P.2d at 1149 (setting forth a balancing test considering the geographic and durational magnitude of the deviation, past toleration of similar deviations, and any risks created by the deviation).

Employing this test, the Board found that Kawakami substantially deviated from his work when he went to his girlfriend's house and had dinner, had a few beers, and took a nap. The Board noted that Kawakami "had a fixed work schedule and a fixed workplace, [and] was, at the time of the accident, outside the boundaries of his employment in terms of time and space." This seven-hour detour was found to be substantial, taking Kawakami out of the scope of his employment and precluding him from re-entering the scope and course of his employment over seven hours later. Moreover, "it was the deviation and not work that brought [Kawakami] to Waianae and to the site where the accident occurred." We hold that the Board's analysis is consistent with the majority view regarding personal deviations, and therefore, we affirm the Board's decision.

Kawakami argues that the foregoing analysis is not consistent with our previous decisions in *Corden v. Paschoal's Ltd.,* 52 Haw. 242, 473 P.2d 561 (1970), and *Chung,* 63 Haw. 642, 636 P.2d 721. Cordon was an employee

of a rental car agency on the island of Maui and was injured while driving one of the company's rental cars from the Lahaina office to the Kahului office. It was the agency's regular practice to instruct Cordon, whenever a smaller car was available in Lahaina, to drive it to Kahului (which was also the town in which he lived) and to exchange it for a larger car to be driven back to Lahaina the next day. The reason for this arrangement was that small cars were easier to rent in the Kahului area. On the day of the accident, Cordon took a Datsun, one of the small cars on the lot, and went out to dinner and several nightclubs before taking the car home to Kahului. Cordon was discovered unconscious the next morning next to the Datsun and later died from his injuries. This court held that Cordon's injuries were compensable because it was clear that he was injured while performing his duty of driving the car to Kahului to be exchanged.

Kawakami argues that the present case should be decided based on our holding in *Corden* because, as in *Corden*, Kawakami deviated from his employment but re-entered its course and scope when he began the trip back to the baseyard to return the BOWS vehicle. The present case, however, is distinguishable from *Corden* because Kawakami had no discretion as to when he could return the vehicle. In *Corden*, the employee had discretion over the rental cars and set his own working hours. *Corden*, 52 Haw. at 243, 473 P.2d at 562. His job required him to drive cars to Kahului to be exchanged. It was undisputed that Cordon was driving in the direction of his home when the accident occurred. Whether he exchanged the Datsun that night or the following morning was entirely within his discretion. Thus, Cordon was performing his job duty by driving the car home and did not deviate from his employment because he was allowed to set his own work hours. In the present case, Kawakami was not authorized to take the BOWS vehicle halfway across the island from Ka'a'awa to Wai'anae for a personal trip that lasted seven hours.

Our holding is also consistent with our decision in *Chung*. In *Chung*, we compensated an employee for a heart attack, which occurred after-hours and off-premises while the employee was jogging. We held that the

> [t]he work-connection approach rejects the necessity of establishing temporal, spatial, and circumstantial proximity between the injury and employment. Instead, focusing on the injury's origin rather than the time and place of its manifestation, the work-connection approach simply requires the finding of a causal connection between the injury and any incidents or conditions of employment.... [T]he pertinent nexus is a causal, as opposed to a temporal or spatial one."

*Chung*, 63 Haw. at 648, 636 P.2d at 725 (quoting 1A *Larson's Workers' Compensation Law* § 29.22 (1979)). Kawakami maintains that the Board erred by holding that Kawakami's injuries are not compensable on the ground that, "at the time of the accident, he was outside the boundaries of his employment in terms of time and space[.]" The fact that Kawakami's injuries occurred beyond the scope of his employment both temporally and spatially are but two factors in determining overall work-relatedness. Our holding in *Chung* does not prohibit the consideration of these factors. Moreover, there is absolutely no nexus between visiting a girlfriend halfway around the island and the work of a BOWS supervisor. Thus, the deviation itself fails the unitary test.

## B.  *Kawakami's Other Claims*

Because we hold that Kawakami's injuries are not compensable under the substantial deviation doctrine, we need not address his remaining claims on appeal.

## IV.  *CONCLUSION*

Based on the foregoing reasons, we affirm the Board's holding that Kawakami's injuries are not compensable because he substantially deviated from the course of his employment by driving the BOWS vehicle halfway around the island to a girlfriend's house on a trip that lasted seven hours. This deviation constituted a total abandonment of his work, and, thus, he could not re-enter the scope of his employment upon embarking on a trip to return the BOWS vehicle.

Dissenting Opinion of ACOBA, J.

I respectfully dissent, inasmuch as I believe the presumption that the work injury was covered in Hawai'i Revised Statutes (HRS) § 386–85 (1993)[1] governs and was to be applied in deciding the case of Claimant–Appellant Richard S. Kawakami (Claimant) as in every other worker compensation case. Because the Labor and Industrial Relations Appeals Board (Board) failed to apply this presumption and instead applied a special categorical rule, I would remand the case to the Board for application of the presumption.

In this case, it is apparent that the City and County of Honolulu Board of Water Supply (Employer) maintained a mandatory policy of assigning trucks to certain employees and requiring those employees to return the truck at the end of the day. It is undisputed that Claimant was injured while he was in his assigned vehicle and claimed he was returning it to work; hence, the presumption was implicated.

## I.

### A.

In *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 636 P.2d 721 (1981), this court explained that "HRS § 386–85(1) creates a presumption in favor of the claimant that the subject injury is causally related to the employment activity." *Id.* at 650, 636 P.2d at 727. In addition, this court recognized the "liberal, unitary concept of work-connection" for determining whether an injury was work-related. *Id.* at 648, 636 P.2d at 725. The unitary test requires "the finding of a causal connection between the injury and *any* incidents or conditions of employment." *Id.* (emphasis added). The extent to which that connection will be drawn was exemplified in *Chung*. In that case, this court found a causal connection between high-stress conditions at work and a heart attack, even though the heart attack occurred after work and while the claimant was jogging and not engaged in any employment activity. *See id.* at 652, 636 P.2d 721, 636 P.2d at 727.

Accordingly, the presumption in HRS § 386–85(1) "imposes upon the employer both the heavy burden of persuasion and the burden of going forward with the evidence." *Id.* (citing *Akamine v. Hawaiian Packing & Crating Co.*, 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972)). To the extent the presumption imposes a "heavy burden of persuasion[,]" *id.* at 650, 636 P.2d at 726, upon the employer, the presumption itself is enough to establish *prima facie* evidence of the causal relationship. The Board must determine "whether [any] evidence adduced by the employer is substantial[.]" *Acoustic, Insulation & Drywall, Inc. v. Labor & Indus. Relations Appeal Bd.*, 51 Haw. 312, 317, 459 P.2d 541, 544 (1969). "The term 'substantial evidence' signifies a high quantum of evidence which, at the minimum, must be 'relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable [person] that an injury or death is not work connected.'" *Chung*, 63 Haw. at 650, 636 P.2d at 727 (quoting *Akamine*, 53 Haw. at 408–09, 495 P.2d at 1166). In the absence of substantial evidence, "the claimant must prevail[.]" *Id.* at 650, 636 P.2d at 726.

### B.

Applying the the statutory presumption, it is arguable that Claimant's injuries were compensable. This case is analogous to *Corden v. Paschoal's Ltd.*, 52 Haw. 242, 473 P.2d 561 (1970). The employee in *Corden* was responsible for driving small rental cars to Kahului, where he lived, and exchanging them for larger cars to be driven back to work in Lahaina. *See id.* at 243, 473 P.2d at 562. After work one night, the employee picked up his girlfriend and went out to

1.  HRS § 386–85 states:

    In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

    (1) *That the claim is for a covered work injury;*
    (2) That sufficient notice of such injury has been given;

    (3) That the injury was not caused by the intoxication of the injured employee; and
    (4) That the injury was not caused by the wilful intention of the injured employee to injure oneself or another. ·

    (Emphasis added.).

dinner and "to several nightclubs to drink and dance." *Id.* Around midnight, he began his trip back to Kahului. *See id.* He was later "discovered unconscious at the bottom of a cliff next to the wrecked [car]." *Id.*

In *Corden,* this court expressly held that "as soon as [the decedent] undertook [a business related trip], it was then and there that he commenced to perform his duties as an employee" and that "[w]hatever the decedent did prior to starting this trip towards [the destination] is immaterial on this issue and it may be deemed that it was his personal business or doings." *Id.* at 245, 473 P.2d at 563. This court acknowledged the deviation doctrine, such as that raised in this case, *see id.* ("some courts have held that a lengthy antecedent deviation will bar recovery"), but chose not to apply this rule.

Instead, this court explained that, because decedent was "performing one of his duties for which he had been hired," *id.,* and HRS § 386–3 stated if "an employee suffers personal injury ... by accident arising out of and in the course of employment[,]" *id.* at 244, 473 P.2d at 563 (quoting HRS § 386–3), then the injury was compensable. *See id.* at 245, 473 P.2d at 563. *Corden* noted the presumption in HRS § 386–85 "is more than a procedural device that disappears upon the introduction of contrary evidence," *id.* at 244 n. 1, 473 P.2d at 562 n. 1 (citation omitted); but this court explained that it was not necessary to rule that the court should have given an instruction to that effect, *see id.* at 246, 473 P.2d 561, 473 P.2d at 563, because it had ruled as a matter of law that the injury was covered. *See id.*

*Corden* is relevant to the case at hand, insofar as it addresses similar facts and the actions of an employee.[2] I do not believe this case may be distinguished on the ground that "[Claimant] had no discretion as to when he could return the vehicle[,]" majority opinion at 289, 59 P.3d at 924, and "was not authorized to take the [Employer's] vehicle halfway across the island[.]" *Id.* at 290, 59

P.3d at 925. While such discretion was considered a factor in the *Corden* decision, this court focused primarily on the fact that the claimant was "performing one of his duties." *Corden,* 52 Haw. at 245, 473 P.2d at 563.

It is undisputed that Claimant's "job responsibilit[y] ... [was] to return the [Employer's] vehicle to the Honolulu base yard *each day* [,]" and at the time of the accident, he claimed to be completing that duty. As this court has previously stated, "if there is reasonable doubt as to whether an injury is work-connected, the humanitarian nature of the statute demands that doubt be resolved in favor of the claimant." *Akamine,* 53 Haw. at 409, 495 P.2d at 1164. *See also Nakamura v. State,* 98 Hawai'i 263, 272, 47 P.3d 730, 739 (2002) (Acoba, J. concurring in part and dissenting in part, joined by Ramil, J.) (noting that, "where there is a reasonable doubt as to whether an injury is work-connected, it must be resolved in favor of the claimant" (quotation marks omitted)); *Igawa v. Koa House Rest.,* 97 Hawai'i 402, 411, 38 P.3d 570, 579 (2001) (Acoba, J., concurring in part and dissenting in part) (" 'if' a reasonable doubt exists as to the work-connected nature of the injury, it was mandated, *i.e.,* 'demand[ed]' by the statute that the issue 'be resolved in favor of the claimant' " (citation omitted)).

## II.

The majority adopts a categorical rule which states that, "when an employee departs from his normal job duties on a personal errand that serves no purpose of the employer, there is no longer a work connection and any injury sustained during that deviation will not be compensable." Majority opinion at 288, 59 P.3d at 923. In that regard, Larson does note that the "deviation problem ... has produced some split of opinion[.]" *Larson's, Workers' Compensation Law* § 17.03[3] (2002).

2. Employer argues that *Corden* is distinguishable because Claimant was turning around at the time Claimant was injured in order to determine whether his girlfriend was following him on his way to work. As I believe we should remand

this case to the Board, I do not address this issue. The Employer of course would have to submit "substantial evidence" that the Claimant's detour under the facts was not related to the work activity of returning the vehicle.

A number of the cases cited for the proposition of a "substantial deviation" rule are distinguishable insofar as they do not involve a statutory presumption in favor of an employee. *See Ogren v. Bitterroot Motors, Inc.,* 222 Mont. 515, 723 P.2d 944, 946 (1986) (stating the Montana "general standard[,]" but not indicating any presumption); *Carter v. Burn Constr. Co. Inc.,* 85 N.M. 27, 508 P.2d 1324 (N.M.1973) (holding there was a deviation, but making no reference to a presumption); *Hebrank v. Parsons, Brinckerhoff, Hall & MacDonald,* 88 N.J.Super. 406, 212 A.2d 579, 582 (1965) (citing the majority rule which states that, "[g]enerally, an accidental injury sustained by an employee while going to or returning from his place of employment is deemed *not to have arisen out of or been in the course of employment*" (emphasis added) (citations omitted)).

Commentators have referred to a variation of the deviation rule called the doctrine of re-entry, seemingly at odds with the one adopted by the majority. *See Modern Worker's Compensation* § 111:20 at 32 (1993) ("resuming a course reasonably related to the employer's business has been judicially interpreted to mean ... returning an employer-provided vehicle to the place where it customarily belongs" (footnotes omitted)); *Folse v. American Well Control,* 536 So.2d 686, 689 (La.Ct.App.1988) ("The doctrine of re-entry or temporary deviation ... accepted by ... this State ... mean[s] ... after [the employee] has completed his private mission and has begun to return to his next duty, or, after such completion, *has begun to return the vehicle to the place where it belongs.*" (Emphasis added.) (Quotation marks omitted.)).

In *Kodiak Oilfield Haulers v. Adams,* 777 P.2d 1145, 1149 (Alaska 1985), the Alaska Supreme Court applied a "substantial deviation" rule, but also held that the statutory presumption applied to "medical causation" as well. *Id.* at 1150 (citing *Rogers Elec. Co. v. Kouba,* 603 P.2d 909, 911 (Alaska 1979)). However, the court noted that the failure to apply the presumption was a harmless error, as the employer had already presented substantial evidence to rebut the presumption. *See id.*

### III.

With all due respect, I believe a substantial deviation rule undercuts the statutory presumptions laid out in Hawaii's worker compensation laws. The unitary test, as it was adopted, does not incorporate any specific doctrine. *See Chung* generally. Under the plain language of HRS § 386–85, a presumption of work connectedness applies until the employer rebuts it with "substantial evidence." Indeed in *Korsak v. Hawai'i Permanente Med. Group,* 94 Hawai'i 297, 12 P.3d 1238 (2000), this court expressly confirmed that the presumption of coverage applies "at the outset" and controls unless rebutted; any reasonable doubt favoring the claimant.

> Rather HRS § 386–85 clearly dictates that coverage will be presumed at the outset, subject to being rebutted by substantial evidence to the contrary. *This is so in all claims proceedings,* ... as the legislature has determined that, <u>where there is a reasonable doubt as to whether an injury is work-connected, it must be resolved in favor of the claimant.</u>

*Id.* at 306, 12 P.3d at 1247 (quoting *Akamine,* 53 Haw. at 409, 495 P.2d at 1166)) (italicized emphasis in original) (brackets omitted) (underscored emphasis added). This court has already recognized that Hawaii's statutory presumption "places a heavy burden on the employer" that is *different* from most other jurisdictions. *See id.* at 307, 12 P.3d at 1248 (explaining that "[i]n most other jurisdictions, the burden is placed on the employee" (citing *Larson's Worker's Comp. Law* § 80.33(a) (2000)). Our legislature has deliberately chosen to "cast a heavy burden on the employer in work[ers'] compensation cases" because "work injuries are among the costs of production which industry is required to bear[.]" *Id.* (quoting *Akamine,* 53 Haw. at 409, 495 P.2d at 1166). As I believe the "substantial deviation" rule disregards the statutory presumption of work connectedness and the "reasonable doubt" rule, I must disagree with its adoption. Consistent with HRS § 386–85, *Chung,* and *Corden,* the presumption should be applied. If the employer is able to produce substantial evidence to rebut the presumption, then the claim

would be denied, unless reasonable doubt as to coverage exists.

## IV.

For the reasons stated, I would remand this case to the Board to apply the statutory presumption of work coverage in HRS § 386–85.